IRA S. FELDMAN AND SUSAN B. FELDMAN, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 14126–82.　　Filed January 8, 1985.

*Ira S. Feldman,* pro se.
*Marikay Lee-Martinez,* for the respondent.

COHEN, *Judge*: Respondent determined a deficiency of $1,280 in petitioners' 1979 Federal income taxes. The questions for decision are whether petitioners may deduct the costs of maintaining space in their home that is leased to petitioner Ira Feldman's employer for Ira Feldman's use as a home office, and, if so, what amounts are deductible.

1

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference.

Petitioners are husband and wife and resided in Phoenix, Arizona, during the year in issue and when they filed their petition herein. They filed a timely return for 1979 with the Internal Revenue Service in Ogden, Utah. Subsequent references to "petitioner" shall be to Ira S. Feldman.

Prior to and during the year in issue, petitioner was an employee, shareholder, and director of the public accounting firm of Toback, Rubenstein, Feldman, Murray & Freeman (hereinafter referred to as TRFMF or the company). He was in charge of the tax department in 1978 and through August 1979, when he succeeded Harold Toback as managing director of TRFMF. He owned 18.9 percent of the total outstanding shares of stock of the company in 1979.

As a director of the company, petitioner had substantial administrative duties in addition to his client responsibilities and spent many hours beyond the normal workday attending to all of his tasks. Petitioner's office at the company headquarters was open to the rest of the staff, and petitioner was usually available for informal conferences with the other employees. As a result, petitioner rarely had extended periods of uninterrupted work time and found it very difficult to discuss confidential firm business with the other directors while in the office. Petitioner was therefore required to and expected to do a substantial amount of work at home in order to fulfill his high level of responsibility.

In 1977, petitioners contracted for a custom-built nine-room house, of approximately 3,700 square feet of living space, and an adjacent two-car garage. The house was located approximately 4 miles from the company's offices. On the second floor, across from the master bedroom suite, petitioners built a room of approximately 210 square feet of usable space that was designed to serve as an office.

In 1978, Toback and petitioner agreed that the company should lease additional office space for petitioner and that it would be most convenient for both parties if the office were in petitioner's home. Petitioner and TRFMF entered a rental agreement drafted by petitioner for the use of the space in

petitioner's home that petitioner had built for that purpose. The company agreed to pay $450 per month to petitioner as rent for furnished office space and covered space in petitioner's garage for petitioner's car, which was often devoted to business use. They did not consult any expert on market value of rental space; they made their own determination of what they considered fair rental. Petitioner, as lessor, agreed to pay all maintenance and utilities charges. The rental was on a month-to-month basis and was cancelable at the option of the company.

This agreement continued in effect throughout 1979, and, in that year, the company paid petitioner $5,400 designated as rent. In 1979, the fair market value in Phoenix of comparable furnished, high-quality office space that was completely maintained by the lessor and air conditioned 24 hours a day, if needed, was approximately $240 per month ($2,880 per year). The fair rental value of the covered parking space was approximately $20 per month ($240 per year).

Petitioner used the home office on a regular basis exclusively on company business during 1979. On rare occasions he met there with clients because it was more convenient for the client to come to his home than to company headquarters. More frequently, he met there with other company directors to discuss firm business. Petitioner parked his car in the garage space leased by the company.

In the April 1979 issue of the company's client newsletter, petitioner reported to his clients that the Internal Revenue Service was seeking to prepare a "test case" concerning the deductibility of expenses incurred by an employee renting home office space to his employer for the employee's own use. Petitioner outlined the Service's purported criteria for deductibility and suggested ways in which, in his opinion, taxpayers could meet these standards.

On his return for 1979, petitioner reported $5,400 as rental income and claimed deductions of $2,975 as attributable to the production of that income. To calculate his deductions, petitioner first determined that 15 percent of his home was rented to his employer by counting the office as one room out of nine and the garage as one-half room (but a room of lesser value). He then deducted 15 percent of the sums expended for insurance, utilities, city charges, pest control, repairs, and

maid service, which totaled $1,261. Petitioner calculated and claimed depreciation of $1,714, using as his basis for the office 15 percent of construction costs of the residence and the actual purchase price of the office furnishings.

OPINION

Section 280A(a)[1] provides the general rule that no deduction is allowable "with respect to the use of a dwelling unit which is used by the taxpayer during the taxable year as a residence." Subsection (c) of section 280A lists exceptions to the general rule. The exceptions relevant to the parties' arguments are set forth below:

SEC. 280A(c). EXCEPTIONS FOR CERTAIN BUSINESS OR RENTAL USE; LIMITATION ON DEDUCTIONS FOR SUCH USE.
   (1) CERTAIN BUSINESS USE.—Subsection (a) shall not apply to any item to the extent such item is allocable to a portion of the dwelling unit which is exclusively used on a regular basis—
      (A) [as] the principal place of business for any trade or business of the taxpayer,
      (B) as a place of business which is used by patients, clients, or customers in meeting or dealing with the taxpayer in the normal course of his trade or business, or
      (C) in the case of a separate structure which is not attached to the dwelling unit, in connection with the taxpayer's trade or business.
In the case of an employee, the preceding sentence shall apply only if the exclusive use referred to in the preceding sentence is for the convenience of his employer.

       *       *       *       *       *       *       *

   (3) RENTAL USE.—Subsection (a) shall not apply to any item which is attributable to the rental of the dwelling unit or portion thereof (determined after the application of subsection (e)).

Subsection (e) requires a taxpayer who uses the dwelling unit for personal purposes during the taxable year, as a residence or otherwise, to limit his deductions to the amount determined after applying the percentage obtained by comparing the number of days the unit (or portion thereof) is rented to the total number of days the unit (or portion thereof) is used. *Bolton v. Commissioner*, 77 T.C. 104 (1981), affd. 694 F.2d

[1] Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954 as amended and in effect during the year in issue.

556 (9th Cir. 1982). Paragraph (5) of section 280A(c) further limits the deduction authorized in case of rental use of a residence to the excess of the gross rental income over the portion of the expenses otherwise allowable (such as mortgage interest and taxes) that are attributable to the rental use. In other words, any net rental loss cannot be offset against unrelated income.

Petitioner claims the right to deduct the amounts in dispute on the basis of the exception provided in paragraph (3) of section 280A(c), i.e., the exclusion for rental use. Petitioner's argument is that he rented to another a portion of his home for the entire taxable year at fair rental value, thereby generating income, and therefore is entitled to reduce the rental income by the expenses attributable to its production.

Respondent does not deny that under section 280A a taxpayer may offset income attributable to the rental of a portion of his home with the costs of producing that rental income. He contends, however, that the rental arrangement here is an artifice arranged to disguise compensation as rental income in order to enable petitioner to avoid the strict requirements of section 280A(c)(1) for deducting home office expenses. Because there was no actual rental of a portion of the home, argues respondent, petitioner must qualify under section 280A(c)(1) before he may deduct the home office expenses. Respondent points to the close relationship of the parties to the rental agreement, the high rent, and petitioner's intimate knowledge of the literal requirements for deductibility under section 280A in support of his argument that the rental agreement "existed on paper only" and served no business purpose of the lessee.

Respondent is correct in asserting that the lessor and lessee herein dealt at less than arm's length and that the rent paid to petitioner was in excess of fair market value. These two facts do not necessarily destroy the bona fides of the rental arrangement, however. A close relationship between a lessor and lessee does not mean that a valid lease agreement between them cannot exist (*Kansas City Southern Railway v. Commissioner*, 76 T.C. 1067, 1102 (1981), on appeal (8th Cir., Oct. 25, 1982)), but it does require a careful examination of the circumstances surrounding the arrangement to determine whether the payments are, in fact, for the rental of property.

*Davis v. Commissioner*, 26 T.C. 49, 56 (1956). In so doing, we must attempt to determine what unrelated parties dealing at arm's length would have done under otherwise similar circumstances. *Utter-McKinley Mortuaries v. Commissioner*, 225 F.2d 870 (9th Cir. 1955), affg. a Memorandum Opinion of this Court.

Similarly, the payment of excessive rent does not necessarily taint the character of the entire payment. See, e.g., *Place v. Commissioner*, 17 T.C. 199 (1951), affd. 199 F.2d 373 (6th Cir. 1952); *Kansas City Southern Railway v. Commissioner, supra,* wherein only that amount beyond the reasonable rent was disallowed as a deduction for rent. Rather, the reasonableness of the payment is only one element to be considered in determining the ultimate issue, viz, whether the payments are being made for the continued use and occupancy of property. *Place v. Commissioner, supra.*[2] The burden of proof as to the reasonableness of the rent, as well as the nature of the payments, is on petitioner. Rule 142(a), Tax Court Rules of Practice and Procedure.

We are convinced that at least part of the payments made to petitioner as rent by the company were to compensate petitioner for the company's use and occupancy of space in petitioner's home. The evidence demonstrates that the work of the company demanded and received substantial amounts of petitioner's time, and it was in the company's best interests to provide petitioner with additional and more private office space. Problems of confidentiality and frequent interruptions made it necessary that such office space be away from petitioner's regular office on the company premises. In this regard, the case is somewhat unique; and this degree of business necessity goes far beyond the "appropriate and helpful" standard for deduction of home offices that created administrative problems and was intended to be eliminated by section 280A. See S. Rept. 94–938 (1976), 1976–3 C.B. (Vol. 3) 49, 185–186.

Although it may have been petitioner's idea to locate the office in his home, and he may have had both enough influence in the company to effectuate his idea and an understanding of the requirements of the Internal Revenue Code, we neverthe-

---

[2]See also *Velvet Horn, Inc. v. Commissioner*, T.C. Memo. 1981–227; *Post Bros. Construction Co. v. Commissioner*, T.C. Memo. 1973–257; *Sparks Nugget, Inc. v. Commissioner*, T.C. Memo. 1970–74, affd. 458 F.2d 631 (9th Cir. 1972).

less conclude that the rental arrangement was bona fide. The company had a business necessity in providing petitioner with office space outside of company headquarters that was comfortable and convenient for petitioner. The most logical spot for that office was in petitioner's home. The fact that the location of the office was convenient to petitioner does not override the business purpose. See *Heineman v. Commissioner*, 82 T.C. 538, 544–545 (1984).

The parties entered into an agreement for the use of office space that set forth mutual benefits and burdens, and the payments for that use, to the extent they are reasonable, are properly designated as rent. There is no evidence in the record to suggest that the company would have paid the $5,400 to petitioner even if it had not leased the office. Because we have found that petitioner actually rented the office to the company, the costs of the office space were therefore "attributable to the rental of the dwelling unit or portion thereof." In these circumstances, the deductions are permitted under the literal language of section 280A. They would not be permitted, of course, if petitioner had not established that a clearly identifiable physical space was the subject of a lease; that such space had a determinable rental value; and that the deductions claimed were supported by proof of the costs attributable to the leased space. We have often applied equivalent tests in cases decided under section 162(a)(3), dealing with deduction of rent in trade or business contexts, including those cited above. We believe that the factual determinations required in concluding that a bona fide rental arrangement exists are an adequate assurance that the express statutory exception for rental use is not being abused.

Petitioner's deductions are limited, however, by section 280A(c)(5), to the amount of his gross income from the rental reduced by the portion of his deductions for mortgage interest and taxes allocable to the rental use.[3] It is therefore necessary to determine what portion of the payments was actually rent and what portion of the house was devoted to rental use.

A lease amount negotiated at arm's length will be presumed to be reasonable. *Potter Electric Signal & Manufacturing Co. v. Commissioner*, 286 F.2d 200 (8th Cir. 1961), affg. a Memoran-

---

[3]Petitioner rented the office for 365 days in 1979, so 100 percent of the expenses of the office are attributable to the rental. Sec. 280A(e).

dum Opinion of this Court. Because petitioner was an officer and shareholder of the company, however, we must look beyond the agreement of the parties to the lease to determine a reasonable rent. In finding a total value of $260 per month ($3,120 per year), we have relied on the testimony of petitioner's expert and respondent's expert, whose approximations of rental value did not vary substantially.

Both petitioner and respondent rely upon Rev. Rul. 62–180, 1962–2 C.B. 52, 54, for determining what portion of the home was devoted to the rental use. That ruling states:

> Where a portion of a residence is devoted to business purposes on a regular basis, the portion of the depreciation and other costs incurred in maintaining the residence, which is properly attributable to the space used in business, is a question of fact to be decided in each case. However, in making an allocation of expenses, it would, if the circumstances warrant, be proper to compare the number of rooms or square feet of space devoted to a business purpose to the total number of rooms or square feet in the residence and apply the ratio thus arrived at to the total of each of the expenses properly attributable to the use of part of the residence for business purposes. Such methods of allocation are not the only methods which may be made. Any other method which is reasonable under the circumstances will be acceptable.

Petitioner counted the rooms in his house and treated his office as one out of nine rooms and his garage space as one-half room, but a room of lesser value, to arrive at a figure of 15 percent as the portion of the house attributable to the rental. This method attributes over 11 percent of the house to the office, but the office actually comprised less than 6 percent of the usable square footage of the house. Respondent's expert compared the actual square footage of the office and the part of the garage used for parking petitioner's car to the total square footage of the house and concluded that 9 percent of the house was devoted to the rental use. This is the more precise method and is therefore the most reasonable method available here. Thus, only 9 percent of the basis of petitioner's home may be depreciated, and only 9 percent of the home expenses may be allocated to the rental use of the home. Petitioner must also reduce his gross rental income by 9 percent of his home mortgage interest and real estate taxes, under section

280A(c)(5), before taking the deductions allowable for rental use.

To reflect the foregoing,

*Decision will be entered under Rule 155.*

Reviewed by the Court.

DAWSON, FAY, STERRETT, GOFFE, CHABOT, NIMS, KÖRNER, SHIELDS, SWIFT, JACOBS, GERBER, and WRIGHT, *JJ.*, agree with the majority opinion.

WHITAKER, HAMBLEN, and CLAPP, *JJ.*, did not participate in the consideration of this case.

---

NIMS, *J.*, concurring: While I agree that this case falls within the language of section 280A(c)(3) (relating to "rental use"), I deem it essential to recognize the result for what it is, namely, one which follows from the facts as found by the trial judge, and nothing more. It may confidently be expected that close scrutiny will be given similar fact patterns in the future where the possibility of compensation disguised as rent may be present. Under such circumstances, the conditions for home office deductions provided by Congress in section 280A(c)(1) will, of course, apply.

CHABOT, COHEN, JACOBS, GERBER, and WRIGHT, *JJ.*, agree with this concurring opinion.

---

SIMPSON, *J.*, dissenting: It is easy to take a narrow view of the arrangement at issue in this case and conclude that it is nothing more than a lease described in section 280A(c)(3). However, in my judgment, it is our responsibility to take a broader view of the arrangement, to examine all the surrounding circumstances, and to recognize that the effect of the arrangement is to subvert the limitations of section 280A(c)(1) on the use of a personal residence for business purposes. Hence, I believe the deductions should be disallowed.

It is well settled that, generally, the tax consequences of a transaction are to be based upon its substance, not its form.

*Gregory v. Helvering,* 293 U.S. 465 (1935); *Commissioner v. Court Holding Co.,* 324 U.S. 331, 334 (1945); *Helvering v. Clifford,* 309 U.S. 331 (1940). It is equally well settled that to determine the substance of a transaction, the various related steps must be judged together, not separately. *Gregory v. Helvering, supra; Helvering v. Alabama Asphaltic Limestone Co.,* 315 U.S. 179, 184–185 (1942); *Minnesota Tea Co. v. Helvering,* 302 U.S. 609, 613 (1938). Form is too ephemeral; it is too subject to mistake or manipulation. *Schmitz v. Commissioner,* 51 T.C. 306 (1968), affd. sub nom. *Throndson v. Commissioner,* 457 F.2d 1022 (9th Cir. 1972); *Hook v. Commissioner,* 58 T.C. 267 (1972). Tax consequences, in fairness to both the taxpayer and the Commissioner, should be based on harder stuff.

In the venerable case of *Gregory v. Helvering, supra,* the taxpayer owned the stock of the old corporation. A new corporation was formed. The old corporation transferred some of its property to the new corporation, and the stock of the new corporation was issued to the taxpayer. Thereafter, the taxpayer liquidated the new corporation and received a distribution of the property. The taxpayer maintained that there was a tax-free corporate reorganization and that she received the property as a liquidating distribution. In his famous opinion (69 F.2d 809 (2d Cir. 1934)), Judge Learned Hand recognized that if the transactions were separated, they came within the literal terms of the statute. However, he observed:

It is quite true * * * that as the articulation of a statute increases, the room for interpretation must contract; but the meaning of a sentence may be more than that of the separate words, as a melody is more than the notes, and no degree of particularity can ever obviate recourse to the setting in which all appear, and which all collectively create. * * * [69 F.2d at 810–811.]

Both the Supreme Court and Judge Hand refused to consider the transactions to be separate ones; they viewed them together and concluded that the statutory provisions were not intended to permit the conversion of a dividend into a liquidating distribution.

In *Helvering v. Clifford,* 309 U.S. 331 (1940), the Supreme Court again refused to recognize, for tax purposes, the niceties of legal transfers of property. The Court said:

Technical considerations, niceties of the law of trusts or conveyances, or the legal paraphernalia which inventive genius may construct as a refuge from surtaxes should not obscure the basic issue. * * * [309 U.S. at 334.]

The Court found that, despite a transfer in trust, the grantor continued, in substance, to be the owner of the property and taxable on its income. In a like manner, our hands are not tied by the form of the arrangement at issue; in applying the statutory provisions, we must consider all the provisions of section 280A and look to the substance of the arrangement.

Section 280A was enacted in response to the perceived "great need for definitive rules * * * governing the deductibility of expenses attributable to the maintenance of an office in the taxpayer's personal residence." S. Rept. 94–938 (1976), 1976–3 C.B. (Vol. 3) 49, 185; H. Rept. 94–658 (1975), 1976–3 C.B. (Vol. 2) 695, 852. Congress observed:

In many cases the application of the appropriate and helpful test would appear to result in treating personal living, and family expenses which are directly attributable to the home (and therefore not deductible) as ordinary and necessary business expenses, even though those expenses did not result in additional or incremental costs incurred as a result of the business use of the home. * * * [H. Rept. 94–658, *supra*, 1976–3 C.B. at 852.]

See also S. Rept. 94–938, *supra*, 1976–3 C.B. (Vol. 3) at 185. To carry out the legislative purpose, section 280A denies a deduction, in the case of an individual, for all the expenses of a dwelling unit used as a residence, but other provisions of section 280A contain exceptions to that general rule. Section 280A(c)(1) deals with the use of a portion of the residence for business purposes and allows deductions when such portion is exclusively and regularly used:

(A) [as] the principal place of business for any trade or business of the taxpayer,

(B) as a place of business which is used by patients, clients, or customers in meeting or dealing with the taxpayer in the normal course of his trade or business, or

(C) in the case of a separate structure which is not attached to the dwelling unit, in connection with the taxpayer's trade or business.

Another exception is set forth in section 280A(c)(3) for "the rental of the dwelling unit or portion thereof." The clear legislative purpose of these provisions is to deny the taxpayer a deduction for the expenses of maintaining his residence

unless those expenses are attributable to a use described in one of the specified exceptions.

Here, we have a purported lease of a portion of the residence, and if that arrangement is considered a lease, it comes within the terms of section 280A(c)(3). However, this was not a lease to a disinterested third person. It was a lease to the employer of the taxpayer, and as a result of the lease, the taxpayer used a portion of his residence to carry on his business activities. Thus, if we take into consideration the consequences of the lease, we find that we have a taxpayer using a portion of his residence for business purposes and claiming a deduction for the expenses of such use.

Generally, a taxpayer is not to be allowed a deduction for depreciation on his residence or for the expenses of maintaining that residence, unless the business use meets the specific conditions of section 280A(c)(1). Yet, by looking only at section 280A(c)(3), the majority of the Court allows this petitioner deductions for such purposes, without regard to whether his business use meets the conditions of section 280A(c)(1). The allowance of the deductions for depreciation and the other expenses of maintaining the residence attributable to the business use directly contravenes the purpose of section 280A(c)(1). It is no answer to say that the deductions are allowed to offset the rental income; if the deductions are considered from that point of view, then the employer of the petitioner is paying for the depreciation and maintenance of the petitioner's residence, without the petitioner being taxed on such benefits.

We are confronted with a situation in which the transaction at issue may be said to come within the terms of one provision of the statute, section 280A(c)(3), but in which the transaction clearly should be subject to another provision of the statute, section 280A(c)(1). The majority considers only the lease and the applicability of section 280A(c)(3). It is as if the *Gregory* Court had looked only at the liquidating distribution and the statutory provision pertaining to such distributions. However, as in *Gregory*, we should take into consideration all aspects of the transaction, not merely that it is a lease; we should also recognize that it is an arrangement under which a portion of the petitioner's residence is used to carry on his business. We should also, as in *Gregory*, take into consideration the various

applicable statutory provisions and construe them as a whole. When we take into consideration the entire statutory scheme for the treatment of the expenses of maintaining a residence, we should hold that a lease of a portion of the residence to the employer and the resulting use of such portion by the petitioner for business purposes must be examined in the light of the requirements of section 280A(c)(1). When those requirements are not satisfied, the expenses of the residence should not be deductible.

WILBUR and PARKER, *JJ.*, agree with this dissent.

---

PARKER, *J.*, dissenting: I join in Judge Simpson's dissenting opinion but wish to make an additional observation. Section 280A(a) lays down a general rule of nondeductibility of expenses "with respect to the use of a dwelling unit which is used by the taxpayer during the taxable year as a residence." Section 280A(c) then creates four exceptions to the general rule and these four exceptions should be narrowly construed. The effect of the majority opinion is to convert the rental use exception of section 280A(c)(3) into "the great override," which would permit taxpayers to circumvent all of the carefully crafted limitations of the exception for business use (section 280A(c)(1)), the exception for storage use (section 280A(c)(2)), and the exception for day care services (section 280A(c)(4)). I do not believe the Congress intended, or the statute compels, such a perverse result.

SIMPSON, *J.*, agrees with this dissent.