Ira S. FELDMAN and Susan B. Feldman, Petitioners-Appellees,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellant.

No. 85–7317.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 17, 1986.

Decided June 10, 1986.

Stephen E. Sliver, Burch & Cracchiolo, Phoenix, Ariz., for petitioners-appellees.

Elaine F. Ferris, Dept. of Justice, Washington, D.C., for respondent-appellant.

Before SNEED, ANDERSON and POOLE, Circuit Judges.

SNEED, Circuit Judge:

The Commissioner of Internal Revenue appeals a decision of the Tax Court allowing the taxpayer, Ira S. Feldman, to deduct as business expenses the costs of producing income by renting to his accounting firm a room in his house, which he in turn used as a home office. We affirm.

I.

FACTUAL AND PROCEDURAL BACKGROUND

Sometime in 1977, Ira S. Feldman (the taxpayer) and his wife contracted to purchase a home that was to be built to their specifications. The finished house had nine rooms and an adjacent two-car garage. On the second floor, across from the master bedroom suite, stood a room of approximately 210 square feet that was designed for use as a home office. The house was constructed at a distance of roughly four miles from the downtown offices of Toback, Rubenstein, Feldman, Murray and Freeman (Toback & Co.), the accounting firm in which Feldman was, at that time, an employee, director, and shareholder.

From the beginning of 1978 through August 1979, the taxpayer headed the firm's tax department. In August 1979, at which

time he owned 18.9 percent of the total outstanding shares of the firm's stock, the taxpayer became the managing director of the firm. As managing director, the taxpayer assumed substantial administrative responsibilities in addition to his regular work.

The firm had an open-door policy for all its employees. Because of his position of responsibility, the taxpayer was consulted constantly during the day and rarely had extended stretches of time for uninterrupted work at his office. These conditions forced the taxpayer to do a substantial amount of work at his home.

Finally, in 1978, the taxpayer and Toback & Co. mutually agreed that the taxpayer needed additional office space away from the firm in order to perform his duties as an employee and director properly. Both parties agreed that the taxpayer's home was the most convenient place for such an office. Accordingly the firm agreed to rent, for the taxpayer's use, the office space that the taxpayer had built into his new home. The firm agreed to pay the taxpayer $450 per month to rent the furnished home office and a parking space in the covered portion of the taxpayer's garage. As lessor, the taxpayer agreed to pay all maintenance and utility charges. The firm had a month-to-month tenancy that was cancellable at its option.

On the joint federal income tax return that the taxpayer filed with his wife for the taxable year 1979, he reported $5,400 as rental income generated by his home office. He also claimed corresponding deductions totaling $2,975. The amount comprised both depreciation on the office portion of his home and an allocable share of the cost of utilities, insurance, city charges, pest control, repairs, and maid service, based upon the premise that the office and garage space constituted 15% of the total house. The Commissioner disallowed the claimed deductions. In his view, the ex-penses of maintaining the office in the taxpayer's home were not ordinary and necessary business expenses, were not incurred in the production of income, and were therefore nondeductible personal living expenses.

The taxpayer petitioned the Tax Court for review. He argued that the tax deductions were allowable pursuant to section 280A(c)(3) of the Internal Revenue Code of 1954, as amended, which allows deductions for the use of the taxpayer's residence when the claimed expense "is attributable to the rental of the dwelling unit or portion thereof." 26 U.S.C. § 280A(c)(3) (1982). The Commissioner countered that the rental arrangement was a device for compensating the taxpayer an additional $5,400 in a form enabling him to evade the strict requirements for home office deductions laid down by 26 U.S.C. § 280A(c)(1). That provision allows deductions for a home office only when one of three requirements is met: (1) the taxpayer's home office is his principal place of business; (2) the taxpayer regularly uses the home office to meet or deal with clients; or (3) the home office is a separate structure not attached to the dwelling unit. The taxpayer had satisfied none of these criteria.

A full panel of the Tax Court decided in the taxpayer's favor. *Feldman v. Commissioner*, 84 T.C. 1 (1985). The majority found that, although the lease was not negotiated at arms length and the rent exceeded fair market value, the rental arrangement was bona fide. The court emphasized that "the company had a business necessity in providing [the taxpayer] with office space outside of company headquarters that was comfortable and convenient for [the taxpayer]," and that "[t]he most logical spot for that office was in [the taxpayer's] home." *Id.* at 7. The court concluded that the taxpayer was eligible for a deduction under 26 U.S.C. § 280A(c)(3)—albeit a reduced one [1]—even though he could not have deducted the

---

1. The Tax Court found that the fair market value of the rented office was only $260 per month. In addition, it determined that the office and garage space represented 9%, rather than 15% of the taxpayer's residence. Pursuant to 26 U.S.C. § 280A(c)(5) (1982), the court reduced the allowable deduction accordingly. The taxpayer does not challenge this reduction.

same amount pursuant to 26 U.S.C. § 280A(c)(1). A concurring opinion, joined in by six judges, stated that the decision was limited to the particular facts of the case and that courts should carefully scrutinize similar rental arrangements. *Id.* at 9 (Nims, J., concurring).

Three judges dissented. In their view, the majority had read the provisions of 26 U.S.C. § 280A in isolation rather than as an organic whole. The language and purpose of the section, the dissent argued, precluded use of the rental exception in section 280A(c)(3) as a means of circumventing the requirements of section 280A(c)(1). *See id.* at 9–13 (Simpson, J., dissenting).

## II.

## DISCUSSION

The only question before this court on appeal is whether the rental-use deduction allowed by 26 U.S.C. § 280A(c)(3) applies to *all* bona fide rental agreements involving a taxpayer's residence,[2] or whether, on the contrary, the requirements of 26 U.S.C. § 280A(c)(1), *see* discussion *supra*, are applicable when the rented property is a home office that is used exclusively by the taxpayer. The issue is one of first impression at the federal appellate level and has previously been considered only by the court below.

The general rule governing deductions for the taxpayer's residence is set forth in 26 U.S.C. § 280A(a):

> Except as otherwise provided in this section, in the case of a taxpayer who is an individual or an S corporation, no deduction otherwise allowable under [26 U.S.C. §§ 1–1399] shall be allowed with respect to the use of a dwelling unit which is used by the taxpayer during the taxable year as a residence.

The balance of section 280A qualifies this general rule. In particular, subsection 280A(c) enumerates four "business-relat-

ed" exceptions. Under certain specified conditions, a taxpayer may take a deduction for the use of a portion of his residence (1) as a home office; (2) as storage space for the inventory of a retail or wholesale business located at the residence; (3) as rental property; or (4) as a day care center. *See id.* § 280A(c)(1)–(4).

The statute lists these exceptions separately and, on its face, gives no indication that the restrictions pertinent to one apply to the others. The taxpayer thus concludes that each exception is entirely independent. The Commissioner responds that the intent of Congress in 26 U.S.C. § 280A(c)(1) was to strictly limit deductions with respect to *any* home office. Thus, he argues, the rental-use exception should not be interpreted to broaden the home-office exception.

■ Both interpretations are plausible. We believe, however, that the taxpayer has occupied the high ground in this instance. His position draws its support from the plain meaning of the statute. The Commissioner, by contrast, must rely on broader purposes and policies purportedly disclosed by the statute's legislative history.

■ When the literal interpretation of a statute is reasonable, a court must be cautious in considering legislative history offered in support of a contrary position, *see Tulalip Tribes v. FERC*, 732 F.2d 1451, 1454 (9th Cir.1984)—especially when that statute is contained in the Internal Revenue Code. "Under these circumstances a second interpretation should be accepted … only if the evidence is very strong, which will usually require explicit language." *Heppner v. Alyeska Pipeline Service Co.*, 665 F.2d 868, 873 (9th Cir. 1981). The legislative history of the Tax Reform Act of 1976, Pub.L. No. 94–455, 90 Stat. 1520—the act that created the statutory framework under scrutiny here—does not yield such strong evidence in support of the Commissioner's view. Although the

---

**2.** At certain points in the government's brief, the Commissioner appears to suggest that the rental arrangement at issue here was not bona fide. *See* Brief of the Appellant at 10, 18. Because

the Commissioner has chosen not to challenge directly the Tax Court's express finding to the contrary, we ignore these insinuations.

legislative materials discuss the history and purpose of 26 U.S.C. § 280A(c)(1), they are entirely silent on section 280A(c)(3). *See* H.R.Rep. No. 658, 94th Cong., 2d Sess. 157–67, *reprinted in* 1976 *U.S.Code Cong. & Ad.News* 2897, 3050–60; S.Rep. No. 938, 94th Cong., 2d Sess. 144–50, *reprinted in* 1976 *U.S.Code Cong. & Ad.News* 3439, 3576–82; H.R.Conf.Rep. No. 1515, 94th Cong., 2d Sess. 435, *reprinted in* 1976 *U.S. Code Cong. & Ad.News* 4118, 4144.

The Commissioner draws to our attention recent congressional action in support of his view. A bill recently passed by the House of Representatives, *see* 131 Cong. Rec. H12826 (Dec. 17, 1985), would amend § 280A(c)(3) expressly to preclude a business deduction for "any item which is attributable to the rental of the dwelling unit (or any portion thereof) by the taxpayer to his employer during any period in which the taxpayer uses the dwelling unit (or portion) in performing services as an employee of the employer." H.R. 3838, 99th Cong., 1st Sess. (1985), *produced in* Reply Brief for the Appellant at 3. The House Report accompanying the proposed legislation explains that the bill seeks to counteract the decision of the Tax Court that we now review. *See* H.R.Rep. No. 426, 99th Cong., 1st Sess. 132 (1985), *reprinted in* Reply Brief for the Appellant at 4–5.

■ We are content to await the action of Congress. Moreover, we decline to treat the actions of the present Congress as indicative of the purposes motivating a Congress ten years past. As the Supreme Court has observed, "the views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one." *United States v. Price*, 361 U.S. 304, 313, 80 S.Ct. 326, 332, 4 L.Ed.2d 334 (1960). Furthermore, "[l]egislative observations 10 years after passage of [an act] are in no sense part of the legislative history." *United Air Lines v. McMann*, 434 U.S. 192, 200 n. 7, 98 S.Ct. 444, 449 n. 7, 54 L.Ed.2d 402 (1977). Here, the Commissioner refers not even to the views of the entire current Congress, but to those of the House of Representatives alone. Finally,

the House's amendment effort proves only that its members dislike the policy implications of the Tax Court's decision, not that the decision misconstrued the statute. Indeed, one could easily interpret the House's action as a tacit admission that the statute as enacted contains an undesirable loophole.

Under these circumstances, the literal interpretation urged by the taxpayer and approved by the Tax Court should be followed. *See Tulalip Tribes*, 732 F.2d at 1454–55. Unlike some other kinds of legislation, tax laws are not enacted for the ages, but for the special exigencies of a particular time and discrete circumstances. Change in the tax laws is a way of life. Thus, we are confident that Congress can respond with prompt legislation should it believe we misunderstood its commands.

AFFIRMED.