WILLIAM IRVING RUSSELL, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Russell v. Commissioner
Docket No. 16725-92
United States Tax Court
T.C. Memo 1994-96; 1994 Tax Ct. Memo LEXIS 98; March 7, 1994, Filed *98 Decision will be entered under Rule 155. William Irving Russell, pro se. For respondent: William McCarthy. NAMEROFF
NAMEROFF
MEMORANDUM OPINION NAMEROFF, Special Trial Judge: This case was heard pursuant to the provisions of section 7443A(b) (3) [1] and Rules 180, 181, and 182. Respondent determined deficiencies in petitioner's Federal income tax for 1984, 1985, and 1986 in the respective amounts of $ 6,495, $ 3,907, and $ 834. After concessions by the parties, the issues for decision are: (1) Whether petitioner is entitled to rental loss deductions with respect to the property located at 7162 Marymount Way, Goleta, California (the Marymount property); (2) whether petitioner is entitled to a deduction for 1984 for a loan origination fee in the amount of $ 3,190; and (3) whether petitioner is entitled to depreciation deductions for 1985 and 1986 *99 in excess of the amounts allowed by respondent. Some of the facts have been stipulated and are so found. At the time of the filing of the petition herein, petitioner resided in Santa Barbara, California. Petitioner bears the burden of proving respondent's determinations are erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). Rental Loss Deductions
In 1984, petitioner purchased the Marymount property. The Marymount property had two floors -- the first floor consisted of a master bedroom and connecting bathroom, living room, dining room, kitchen, laundry area, and a second bedroom and bathroom; the second floor consisted of two bedrooms and a bathroom. Additionally, the house had a pool, a jacuzzi, and an attached garage. Petitioner used the master bedroom and connecting bathroom as his principal residence. Petitioner testified that the only areas of the house which he utilized were his living quarters and a portion of the garage; he kept a microwave and small refrigerator in his room, and, therefore, did not need to use the kitchen. From September 1984 through March 1986, petitioner rented the other three bedrooms to unrelated *100 third parties in arm's-length transactions. Generally, the tenants had access to the entire house, excluding petitioner's living quarters. However, petitioner had no agreement with the tenants prohibiting his use of the house. In fact, petitioner would occasionally use the laundry, kitchen, and jacuzzi. Additionally, petitioner testified that each tenant had his or her own telephone line. Petitioner allocated 85 percent of the expenses incurred in maintaining the Marymount property to his rental activity. On his Schedules E for 1984, 1985, and 1986, petitioner reported rents received in the respective amounts of $ 3,550, $ 11,760, and $ 2,550, and deducted rental expenses, including depreciation, in the respective amounts of $ 22,542.94, $ 38,979.20, and $ 12,110.55, incurred with respect to the Marymount property. [2] Respondent disallowed all rental expenses in excess of rental income claimed by petitioner, except for mortgage interest and real estate taxes. Interest and real estate taxes were allocated by respondent between Schedules A and C, and this aspect of respondent's determination is not in dispute. *101 Section 280A(a) provides the general rule that no deduction is allowable "with respect to the use of a dwelling unit which is used by the taxpayer during the taxable year as a residence." Section 280A(c) lists exceptions to this general rule. The exception relevant to this issue is contained in section 280A(c)(3), which provides that "Subsection (a) shall not apply to any item which is attributable to the rental of the dwelling or portion thereof (determined after the application of subsection (e))." Subsection (e) requires a taxpayer who uses the dwelling unit for personal purposes during the taxable year, as a residence or otherwise, to limit his deductions to the amount determined after applying the percentage obtained by comparing the number of days the unit (or portion thereof) is rented at a fair rental to the total number of days the unit (or portion thereof) is used. Bolton v. Commissioner, 77 T.C. 104 (1981), affd. 694 F.2d 556 (9th Cir. 1982); Stewart v. Commissioner, T.C. Memo. 1987-436. Section 280A(c)(5) further limits the deduction of the expenses incurred in the rental use *102 of a residence to an amount not to exceed the excess of the gross rental income over the portion of the expenses otherwise allowable (such as mortgage interest and taxes) that are attributable to the rental use. Stewart v. Commissioner, supra, Semander v. Commissioner, T.C. Memo. 1982-25. "In other words, any net rental loss cannot be offset against unrelated income." Feldman v. Commissioner, 84 T.C. 1, 5 (1985), affd. 791 F.2d 781 (9th Cir. 1986). Petitioner contends that section 280A is not applicable to his situation because Congress intended section 280A to apply to vacation homes and not to shared personal residences. However, in Gilchrist v. Commissioner, T.C. Memo. 1983-288, we specifically rejected that argument, observing that the plain language of section 280A contains no such limitations. We stated: [Taxpayers'] arguments why this case is not governed by section 280A are totally without merit. First they contend that Congress intended section 280A to apply only to vacation homes; the Boulder house, they argue, *103 is not a vacation home and deductions pertaining thereto do not come within the statute's limitations. * * * [Taxpayers'] numerous citations to the use of the term "vacation home" in the Committee reports to the Tax Reform Act of 1976 do not persuade us that we should ignore the plain language of section 280A, which in no way limits its scope to "vacation homes." Moreover, when Congress amended section 280A in 1981 (by adding section 280A(d)(3)(A), which was made retroactive to January 1, 1976) to provide that rentals to family members are not subject to section 280A if a fair rental is charged, Congress specifically stated that section 280A applies to dwelling units used by family members as principal residences. See section 280A(d)(3)(A). * * *
Therefore, it is clear that section 280A is not limited to vacation homes. See also Kotowicz v. Commissioner, T.C. Memo. 1991-563. We find petitioner's situation analogous to that of the taxpayers in Stewart v. Commissioner, supra, and Semander v. Commissioner, supra. In both those cases, the taxpayers rented a portion of their *104 principal residence to third parties. The Court concluded that the taxpayers used their homes as their residence, albeit renting a portion thereof, and that the expenses attributable to the rented portion of the taxpayers' dwellings were limited to the rental income less the deductions that would be allowed without regard to the business use of the premises. Moreover, petitioner's argument is contrary to the plain language of the statute, under which a taxpayer is deemed to use a dwelling unit "as a residence" when he "uses such unit (or portion thereof) for personal purposes" (emphasis added). Petitioner further contends that he did not rent out a dwelling unit which was used as his residence. He further contends that, under the facts presented, the master bedroom and bathroom which he used should be considered one dwelling unit, and the rest of the house should be considered as a separate dwelling unit which was rental property. In this sense, he is arguing that his facts are more akin to those of an apartment building, where each apartment has separate facilities for sleeping, eating, and, usually, bathing. We find no support for petitioner's contention in either the *105 statute, regulations, or case law. Indeed, while petitioner may have had a lifestyle that permitted him to avoid use of the common areas of the house, there is nothing in the agreements with his tenants that forbids such use, and, he did, in fact, occasionally use the kitchen, pool, and laundry facilities. The phrase "a portion thereof" is frequently used in section 280A in referring to the dwelling unit, and there is no indication that Congress intended that phrase to be limited to a particular size; thus "a portion thereof" would include either a small or large portion. We conclude that the Marymount property was one house and dwelling unit, and petitioner rented a portion thereof to third parties each year. Accordingly, we hold that section 280A limits the deductions available to petitioner for the Marymount property, and we sustain respondent on this issue. Loan Origination Fee
At trial, petitioner raised as a new issue that he was entitled to deduct a loan origination fee in the amount of $ 3,190 which he failed to claim on his 1984 tax return. The parties, in the first supplemental stipulation of facts, agreed that petitioner did, in fact, pay a loan origination *106 fee in the amount of $ 3,190 with respect to petitioner's acquisition of the Marymount property. However, subsequent to the trial, the parties filed a second supplemental stipulation of settled issues, in which they agreed that petitioner had claimed the $ 3,190 loan origination fee as a deduction on his 1984 Schedule E, which was included in the deductions disallowed by respondent. Section 461(g)(1) provides, generally, that interest prepaid by cash basis taxpayers must be charged to capital and treated as paid in the period to which it is allocable. However, section 461(g)(2) provides an exception to the general rule: (2) Exception. -- This subsection shall not apply to points paid in respect of any indebtedness incurred in connection with the purchase or improvement of, and secured by, the principal residence of the taxpayer to the extent that, under regulations prescribed by the Secretary, such payment of points is an established business practice in the area in which such indebtedness is incurred, and the amount of such payment does not exceed the amount generally charged in such area. [3]
*107 Thus, to be deductible in the year paid under section 461(g)(2), the points must have been paid in respect of indebtedness incurred in connection with the purchase or improvement of the taxpayer's principal residence. Respondent does not contest the other requirements of section 461(g). In dramatically opposite positions to those taken with respect to the previous issue, respondent contends that the points should be amortized over the life of the mortgage because petitioner purchased the Marymount property with the intention of renting out a substantial portion of the property. Petitioner contends that the loan origination fee is for points incurred to finance a loan in connection with the purchase of his principal residence. Alternatively, petitioner contends that the balance of the points, after amortization deductions in 1984 and 1985, is deductible in 1986 when the Marymount property was sold. On this record, we conclude that the points were paid for the acquisition of petitioner's principal residence, the Marymount property. It is undisputed that petitioner intended to and did live in the Marymount property for the entire period from its purchase through its sale. There *108 is no exception in section 461(g) for a principal residence which is also used (partly or substantially) for rental purposes. In Dodd v. Commissioner, T.C. Memo. 1992-341, the taxpayer had obtained a low-interest mortgage based on the condition that the residence was owner occupied. Thereafter, the taxpayer purchased another home for his residence and converted his prior home to rental property. Then, the mortgage holder on the prior home called in the loan, requiring the taxpayer to refinance. The Court determined that the refinancing of the taxpayer's mortgage was undertaken specifically because the property had ceased to be his principal residence. Accordingly, the Court concluded that the points the taxpayer paid to acquire the new loan were not deductible under section 461(g)(2) and had to be deducted in accordance with the general rule of section 461(a)(1). Thus, Dodd is distinguishable and does not support respondent's position. We hold that the points petitioner paid in 1984 to acquire the mortgage on the Marymount property are deductible on Schedule A under sections 163 and 461(g)(2). Schedule C -- Depreciation
During the *109 years at issue, petitioner was engaged in an activity called "electronic consulting/restorations", wherein he restored vintage electronic equipment, which often included the restoration of the wood cabinetry. (We note that respondent has not raised any questions regarding section 183 as to this activity.) Petitioner claimed depreciation on equipment and real property for 1984, 1985, and 1986 in the respective amounts of $ 1,066, $ 1,746.32, and $ 1,517.08. After concessions by the parties, [4] the only issue for decision is whether petitioner is entitled to depreciation for his home office for 1985 and 1986 in the respective amounts of $ 946.69 and $ 718.08. Respondent contends that petitioner does not meet the requirements of section 280A, and, therefore, is not entitled to depreciation on real property. *110 During 1984, petitioner maintained a work space for this activity in his prior home at 5637 Kent Place, Goleta, California (the Kent Place property). In this work space, he had a rolltop desk which stored an oscilloscope, a signal generator, a voltmeter, power supplies, a frequency counter, and a frequency synthesizer; he also had a table, approximately 10 small parts cabinets stacked with old transistors, and bookshelves containing technical books and service manuals. Additionally, petitioner rented an apartment located at 6463-1/2 Fulton, Van Nuys, California (the Van Nuys property) where he did his woodworking. The woodworking equipment kept at the Van Nuys property consisted of saws, sanders, a lathe grinder, a wood shaver, a band saw, and a drill press. In 1985, after purchasing the Marymount property, petitioner moved his rolltop desk, cabinets, bookshelves, and electronic equipment from the Kent Place property to the Marymount property. Petitioner testified that the cabinets and bookshelves were placed in the walk-in closet of his bedroom and the desk in a corner of his bedroom. Also in petitioner's bedroom were a second desk that petitioner used for personal purposes, *111 a futon for sleeping, a refrigerator, and a microwave. Thereafter, late in 1986, petitioner purchased a new home in Santa Barbara, and the electronic and woodworking equipment was moved to Santa Barbara, California. [5]
Section 280A(a), in general, denies deductions with respect to the use of a dwelling unit which is used by the taxpayer during the taxable year as a residence.[6] However, section 280A(c)(1)(A) permits the deduction of expenses allocable to a portion of the dwelling unit which is exclusively used on a regular basis as "the principal place of business for any trade or business of the taxpayer". Thus, to qualify under section 280A(c)(1)(A) for a home office deduction, petitioner must establish that a portion of his dwelling is (1) exclusively used, (2) on a regular basis, and (3) as the principal place of business for his trade or business. Hamacher v. Commissioner, 94 T.C. 348 (1990). *112 Petitioner has failed to demonstrate that his bedroom at the Marymount property was used exclusively for his electronic restoration/consulting business. Throughout the trial, petitioner testified that his bedroom at the Marymount property was used by him for sleeping, eating, and entertaining. There is no authority for considering a small, unwalled portion of a room as a separate area for purposes of section 280A(c)(1)(A). Moreover, although petitioner did a significant amount of work at his Marymount property, we believe the Van Nuys apartment was his principal place of business for this activity. Petitioner testified that he would spend approximately 15 hours *113 a week working at the Marymount property; however, he would occasionally spend entire weekends at the Van Nuys property working at his electronic restoration business. Additionally, petitioner testified that when he met clients, it was at the Van Nuys apartment. Accordingly, we sustain respondent on this issue, and petitioner is not entitled to home office depreciation deductions with regard to the Marymount property. To reflect the foregoing, Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code in effect for the years at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Petitioner's Schedules E contained the following expenses: ↩
Expense
1984
1985
1986
Advertising
$ 19.04  $ 53.20  -0- Cleaning and main.
-0- -0- $ 116.34  Loan fee
4,094.33
-0- -0- Insurance
267.06
257.00
85.68
Interest
6,351.01
18,768.27
5,176.73
Legal and prof.
300.00
-0- 20.00
Repairs
1,546.10
1,184.55
631.14
Supplies
-0- 270.90
-0- Taxes
911.98
1,979.58
1,167.08
Utilities
859.26
2,530.94
855.46
Tree trimming
485.00
-0- -0- Pool maintenance
150.00
579.60
-0- Equipment moving
309.62
-0- -0- Depreciation
7,249.54
13,355.16
4,058.12
3. Sec. 461(g) was added to the Internal Revenue Code of 1954 by the Tax Reform Act of 1976, Pub. L. 94-455, sec. 208(a), 90 Stat. 1541. No regulations have been prescribed by the Secretary with respect to sec. 461(g)↩.
4. The parties have agreed that petitioner is entitled to depreciation on equipment in the amounts of $ 1,659 for 1984, $ 800 for 1985, and $ 799 for 1986, and respondent concedes that such amounts were properly claimed on the respective Schedules C.↩
5. At trial, petitioner conceded that he is not entitled to deduct depreciation on the Santa Barbara property.↩
6. Sec. 280A(c)(2) provides an exception to the general disallowance of deductions for certain storage use in connection with the business use of a residence. However, petitioner does not meet the requirements of sec. 280A(c)(2)↩ since his residence in 1985 and 1986 was not the sole location of his business and his equipment was not being held as inventory.