T.C. Memo. 1997-181


UNITED STATES TAX COURT


FRANK SHIH, JR., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 12738-95.                    Filed April 15, 1997.


Frank Shih, Jr., pro se.

<u>Elaine L. Sierra</u>, for respondent.


MEMORANDUM OPINION


CARLUZZO, <u>Special Trial Judge</u>:  This case was heard pursuant
to the provisions of section 7443A(b)(3) and Rules 180, 181, and
182.  Unless otherwise indicated, all section references are to
the Internal Revenue Code in effect for the year at issue.  All
Rule references are to the Tax Court Rules of Practice and
Procedure.

Respondent determined a deficiency in petitioner's 1991 Federal income tax in the amount of $3,181.

The issue for decision is whether the deductions petitioner claimed on a Schedule E filed with his 1991 Federal income tax return are subject to the limitation imposed by section 280A(c)(5).

Background

Some of the facts have been stipulated, and they are so found. At the time that the petition was filed in this case, petitioner resided in Beijing, China.

In 1987 petitioner purchased and began to use as his principal residence a house in San Bruno, California (the San Bruno residence). The San Bruno residence is a two-story house containing four bedrooms (including a master bedroom that has an outside entrance and a private bathroom), two bathrooms (including the one attached to the master bedroom), a living room, a dining room, a kitchen, a laundry room, storage space, and an attached two-car garage.

Petitioner holds degrees in mathematics and computer science. In 1990 he started working for the Qume Corp. (Qume). Shortly thereafter, Qume began to experience financial difficulties. Because he was concerned about his job security with Qume and to supplement his income, in November 1990 petitioner rented out one bedroom of the San Bruno residence to

an unrelated party.  In June 1991 petitioner was laid off by Qume and remained unemployed for the remainder of that year.

Shortly after being laid off by Qume, petitioner traveled to China to meet and visit with relatives.  He returned to the United States sometime in July 1991.  Uncertain about his future employment prospects in the United States and for other personal reasons, petitioner decided to look for a job in China.  Petitioner's cousin, who lived in Beijing, China, offered to help petitioner find a job in the Beijing area.  During the remainder of 1991, petitioner actively sought employment in China.

After returning to the United States in July 1991, petitioner moved some of his personal belongings to his parents' house in Daly City, California, although he continued to live at the San Bruno residence.  Shortly thereafter, he decided to rent out the two unoccupied bedrooms in his house.  In August 1991 petitioner began to advertise the master bedroom for rent, although he continued to occupy it.

Petitioner believed that foreign students would most likely be willing to participate in a house-sharing arrangement and directed his advertising accordingly.  His advertising efforts took numerous forms.  On an informal basis, he asked friends and relatives if they needed, or knew someone who needed, a room to rent.  He posted flyers at nearby universities, colleges, and public places such as grocery stores and markets.  The flyers

indicated that petitioner was seeking "clean & responsible housemates" and contained the following language:

> House has 4BR 2 BA, 1-3 rooms available. Large private room plus shared kitchen, bath (private bath avail. w. MBR)

Petitioner also placed advertisements in local newspapers such as the San Mateo Times, the Peninsula Mid Week, the San Bruno Herald, and the World Journal. In July 1991, petitioner registered with Tenant Finders and Human Investment Projects, which are placement agencies for tenants and landlords. During 1991, petitioner spent $856.27 for advertising.

For various reasons, petitioner sometimes rejected prospective tenants. In July 1991 petitioner rented one of the bedrooms to Zelma Stone. Ms. Stone paid $380 per month from July through September and $350 per month for the remainder of the year. In September 1991 petitioner rented another bedroom, a parking space in the garage, and storage space to Darren and Mika Dong (a married couple) for 1 year for $540 per month. Although he advertised the master bedroom for rent in 1991, petitioner did not rent it out during 1991. The rental amounts petitioner charged for the bedrooms that were rented out represent fair rental value for those rooms.

Each tenant had exclusive use of his or her bedroom and, along with petitioner, had access to and the right to use the common areas of the house, including the kitchen, living room, dining room, bathroom, and laundry room. Each tenant had a

private lock on his or her bedroom door.  Two tenants had access to a single parking space in the garage.

During 1991, except for the 1-month period that he was in China, petitioner used the San Bruno residence as his principal residence, reserving the master bedroom and a parking space in the garage for his exclusive use.

In late 1991, petitioner was offered a teaching job, which he accepted, at Petroleum University in Beijing, China, for the 1992 academic year.  Petitioner moved to China in September 1992 to begin teaching and has made no personal use of the San Bruno residence since that time.

On a Schedule E filed with his 1991 Federal income tax return, petitioner reported the following items attributable to the rental use of the San Bruno residence:

| Income: | | $4,815.00 |
|---|---|---|
| Expenses: | | |
| Advertising | $856.27 | |
| Auto & travel | 647.24 | |
| Cleaning & maintenance | 1,423.18 | |
| Insurance | 818.42 | |
| Mortgage interest | 10,283.90 | |
| Repairs | 202.25 | |
| Taxes | 1,571.12 | |
| Utilities | 1,184.88 | |
| Lamp, telephone | 230.92 | |
| Dry rot repair | 298.00 | |
| Depreciation | 9,893.28 | 27,409.46 |
| Net loss: | | 22,594.46 |

With the exception of the depreciation deduction, and assuming, without finding, that petitioner properly allocated the

expenses to the rental use of the San Bruno residence, the expenses reflected on the Schedule E were paid or incurred by petitioner during 1991 for the purposes indicated.

In the notice of deficiency respondent determined that the above-listed deductions were limited to the rental income reported on the Schedule E and adjusted petitioner's 1991 taxable income accordingly, explaining:

> It is determined that the $22,594 rental loss claimed on your 1991 return is not allowable. * * * section 280A limits rental expenses to rental income on rental use of personal residences when the rental use exceeds 15 days. The balance of the mortgage interest and real estate taxes have been allowed as deductions on Schedule A.

## Discussion

As we have often stated, deductions are a matter of legislative grace, and a taxpayer claiming a deduction must prove entitlement to it. Rule 142(a); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). Such proof includes establishing that any and all of the statutory requirements necessary for the allowance of the deduction claimed have been satisfied.

The type of deductions claimed on petitioner's Schedule E are generally allowable under section 162(a) or section 212(1). Regardless of which section is applicable, a distinction that is unimportant here, because petitioner used the San Bruno residence as his residence during 1991, the deductions claimed on the Schedule E are subject to section 280A(a), which states that,

except as otherwise provided in that section, in the case of a taxpayer who is an individual, no deduction otherwise allowable under chapter 1 of the Internal Revenue Code is allowable "with respect to the use of a dwelling unit which is used by the taxpayer during the taxable year as a residence." Deductions that are attributable to the rental use of the dwelling unit, or a portion thereof, are excepted from the blanket disallowance of section 280A(a) and can be deducted subject to the limitations imposed by subsections (c)(5) and (e) of section 280A. Sec. 280A(c)(3).

For purposes of section 280A, the test for determining whether a taxpayer is considered to have used a dwelling unit as a residence is set forth in section 280A(d)(1). Pursuant to that section, a taxpayer uses a dwelling unit as a residence if he or she uses the unit (or portion thereof) for personal purposes for a number of days which exceeds the greater of 14 days or 10 percent of the number of days during the year for which the unit is rented at a fair rental. Thus, if, during the taxable year, a taxpayer uses a dwelling unit for rental purposes and also uses the dwelling unit for personal purposes for a number of days in excess of the number specified in section 280A(d)(1), as petitioner did in this case during 1991, the taxpayer is deemed to have used the dwelling unit as a residence, and section 280A(c)(5) applies to the deductions attributable to the rental use.

If a taxpayer uses a dwelling unit for rental purposes and as a residence during the taxable year, section 280A(c)(5) limits the deductions attributable to the rental use of the dwelling unit to an amount not to exceed the excess of the gross rental income derived from the rental use over the sum of:  (1) The deductions allocable to the rental use that are otherwise allowable regardless of such rental use (such as mortgage interest and real estate taxes); plus (2) any deductions that are allocable to the rental activity in which the rental use of the residence occurs, but that are not allocable to the rental use of the residence itself.  As a result, a taxpayer cannot normally offset against unrelated income a net rental loss incurred from, and attributable to, the rental use of the taxpayer's residence. Feldman v. Commissioner, 84 T.C. 1, 5 (1985), affd. 791 F.2d 781 (9th Cir. 1986).

If during a taxable year a taxpayer converts his principal residence to rental property or vice versa, section 280A(d)(4) must be taken into account in order to determine whether, and to what extent, section 280A(c)(5) applies.  Section 280A(d)(4) provides:

> (A) In general.--For purposes of applying subsection (c)(5) to deductions allocable to a qualified rental period, a taxpayer shall not be considered to have used a dwelling unit for personal purposes for any day during the taxable year which occurs before or after a qualified rental period described in subparagraph (B)(i), or before a qualified rental period described in subparagraph (B)(ii), if with respect to such day such unit constitutes the

principal residence (within the meaning of section 1034) of the taxpayer.

(B) Qualified rental period.--For purposes of subparagraph (A), the term "qualified rental period" means a consecutive period of --

(i) 12 or more months which begins or ends in such taxable year, or
(ii) less than 12 months which begins in such taxable year and at the end of which such dwelling unit is sold or exchanged, and

for which such unit is rented, or is held for rental, at a fair rental.

Petitioner considers the San Bruno residence to have been converted to rental property when he began to advertise the master bedroom for rent in August 1991.  He contends that a qualified rental period, within the meaning of section 280A(d)(4)(B), began in August 1991 when all of the bedrooms in the San Bruno residence were either rented or held for rent at fair rental value.  According to petitioner, because a qualified rental period occurred in 1991, section 280A(d)(4)(A) provides that his personal use of the San Bruno residence during that year is ignored for purposes of section 280A(c)(5).  If petitioner's personal use of the San Bruno residence during 1991 were ignored, it would not be considered to have been used by him during that year as his residence for purposes of section 280A(c)(5). Petitioner argues therefore that the rental deductions he claimed on the Schedule E are not subject to section 280A(c)(5).  In the alternative, petitioner argues that each bedroom in the San Bruno

residence should be considered a separate dwelling unit and whether and to what extent section 280A applies must be determined on a bedroom-by-bedroom basis.

Respondent does not agree that the San Bruno residence was converted to rental property in 1991 or that a qualified rental period occurred during that year. She suggests that petitioner did not in good faith attempt to rent out the master bedroom until he was ready to depart for China in 1992. Consistent with her position that 1991 did not include a qualified rental period, respondent argues that section 280(d)(4) does not apply to that year. According to respondent, because petitioner used the San Bruno residence as his residence during 1991, section 280A(c)(5) limits the amount of deductions attributable to its rental use. In response to petitioner's alternative argument, respondent argues that the San Bruno residence must be treated as a single dwelling unit, rather than multiple dwelling units within a single structure, and section 280A should be applied accordingly.

Because petitioner's alternative argument focuses upon whether section 280A applies, rather than how it applies, we consider his alternative argument first. Obviously, the San Bruno residence is a dwelling unit as that term is used throughout section 280A. See sec. 280A(f)(1), which defines a dwelling unit to include a house. Nothing in the statute prohibits treating a single structure as multiple dwelling units, and we have done so in appropriate situations. E.g., <u>Gorod v.</u>

Commissioner, T.C. Memo. 1981-632 (section 280A did not apply to entire building where upper and lower portions were determined to be separate and distinct dwelling units). However, there were no separate and distinct dwelling units within the San Bruno residence during 1991. Rather, as reflected in petitioner's advertisements, the San Bruno residence consisted of a single dwelling unit that was shared by petitioner and "housemate" tenants during 1991.

Petitioner's alternative argument is similar to the taxpayer's argument that we rejected in Russell v. Commissioner, T.C. Memo. 1994-96, affd. without published opinion 76 F.3d 388 (9th Cir. 1995). In Russell we found that the taxpayer's house consisted of a single dwelling unit even though the taxpayer essentially occupied only the master bedroom and bathroom, and the rest of the house was rented out to tenants unrelated to the taxpayer. There are no meaningful distinctions between this case and Russell. Consequently, for the reasons expressed in Russell, we hold that for purposes of section 280A the San Bruno residence must be treated as a single dwelling unit and proceed to consider petitioner's primary argument on that basis.

Petitioner's primary argument, which deals with the application of section 280A(d)(4), assumes that renting, or holding for rent at fair rental value, all four bedrooms in the San Bruno residence equates to renting, or holding for rent at fair rental value, the San Bruno residence as a whole. Unless

this were so, there would be no qualified rental period in 1991, and section 280A(d)(4) would not apply. Petitioner's primary argument next assumes that section 280A(d)(4)(A) allows his personal use of the San Bruno residence for the entire year to be ignored. Unless both assumptions are valid, petitioner's primary argument must be rejected. Because his second assumption is invalid, we need not consider the validity of the first.

For purposes of applying section 280A(c)(5), section 280A(d)(4)(A) provides that personal use of a dwelling unit is ignored for any day during the taxable year that the taxpayer uses the dwelling unit as a principal residence if that day occurs before or after a qualified rental period described in section 280A(d)(4)(B)(i). Any day involving personal use that occurs during a qualified rental period is not ignored. According to petitioner, a qualified rental period began on August 1, 1991, and continued at least through the end of the year. Even if this were so, section 280A(d)(4) would allow petitioner's personal use of the San Bruno residence only from January through July of 1991 to be ignored; it would not allow his personal use from August through December (during the qualified rental period) likewise to be ignored. Taking into account petitioner's personal use of the San Bruno residence during the qualified rental period would, based solely upon such use, give rise to the application of section 280A(c)(5). Because petitioner continued to use the San Bruno residence for personal

purposes (as his residence) while attempting to rent out the remaining bedrooms, he cannot rely upon section 280A(d)(4) to avoid the application of section 280A(c)(5). See Walsh v. Commissioner, T.C. Memo. 1987-18.

Accordingly, we hold that the deductions claimed on the Schedule E filed with petitioner's 1991 Federal income tax are limited to the gross income reported on the Schedule E pursuant to section 280A(c)(5), and respondent's adjustment in this regard is sustained.

To reflect the foregoing,

Decision will be

entered for respondent.