HENRY J. LANGER AND PATRICIA LANGER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent; HENRY J. LANGER AND PATRICIA K. LANGER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Langer v. Commissioner
Docket Nos. 29236-89, 5004-90
United States Tax Court
T.C. Memo 1992-46; 1992 Tax Ct. Memo LEXIS 51; 63 T.C.M. (CCH) 1900; T.C.M. (RIA) 92046; January 27, 1992, Filed *51 Decisions will be entered under Rule 155. Lawrence E. Meuwissen, for petitioners. Albert B. Kerkhove, for respondent. COHEN, Judge. COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined deficiencies in and additions to petitioners' Federal income taxes as follows: Additions to Tax
Sec.
Sec.
6653(a)(1)
6653(a)(2)
Sec.
Docket No.
Year
Deficiency
or (a)(1)(A)
or (a)(1)(B)
6661(a)
5004-90
1984
$ 8,698.00
$ 434.90
[1]
$ 1,723.00
29236-89
1985
4,085.00
204.00
[1]
--   1986
6,243.00
312.00
[1]
--   All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated. After concessions, the issues remaining for decision relate to petitioners' use of their residence for two businesses, their receipt of $ 7,500 in settlement of a claim for breach of a mortgage commitment, *52 and their liability for the additions to tax. FINDINGS OF FACT Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. Petitioners resided in Edina, Minnesota, at the time their petitions were filed. They filed joint Federal income tax returns for the years in issue. Petitioners had three children, whose ages were 13, 12, and 10 in 1984. Prior to and during the years in issue, petitioner Henry J. Langer was a revenue agent for the Internal Revenue Service. During the years in issue, he was assigned to work in special enforcement projects and grand jury matters involving criminal prosecutions relating to drug dealing and money laundering. Mr. Langer also served as the auditor, accountant, and tax specialist of I Care Inc. (the corporation). Prior to and during the years in issue, Mrs. Langer was a piano teacher and operated a piano studio in petitioners' residence. She also served as the vice president and merchandising director of the corporation. The corporation was owned and operated by Mrs. Langer and her two sisters. The corporation was involved in designing, printing, and distributing greeting cards. A *53 portion of petitioners' residence was used for the business of the corporation. During part of 1984, petitioners resided on Whiting Avenue in Edina, Minnesota (the Whiting residence). In 1984, petitioners purchased a new home on Antrim Court in Edina, Minnesota (the Antrim residence). The contract sales price for the Antrim residence was $ 501,358. The residence had approximately 5,500 square feet of floor space, a swimming pool, and deck areas. The Antrim residence was on two levels with separate entrances. The main entrance to the house was on the upper level, and another entrance was on the lower level from the swimming pool area. Certain design changes were made in the residence to accommodate Mrs. Langer's piano teaching business. Areas devoted exclusively to use for the piano studio, totaling approximately 315 square feet, included the studio proper and a room on the lower level of the house containing two pianos, a desk, and other materials relating to Mrs. Langer's teaching. A bedroom and bath on the lower level were used by one of petitioners' three children. The bath was also used by Mrs. Langer's students and their parents. Approximately 600 square feet of the *54 home comprised a lounge area. The lounge contained sectional furniture, including sleeping sofas, a small pedal organ, a popcorn machine, and a television. A smaller room adjacent to the lounge contained an encyclopedia set and other reference materials and a computer. The lounge and that room (the lounge area) were used by petitioners' piano students or their parents. The entire Antrim residence, including the lounge area, was used for an annual open house at which the corporation's products were displayed. The open house was used to share petitioners' success with their family and friends. Approximately 400 square feet of the Antrim residence was used as an office for the corporation. Petitioners rented the office space and computer equipment to the corporation. Petitioners reported rental income from the corporation for the office space and computer equipment of $ 30,000 in 1984, $ 27,927 in 1985, and $ 46,000 in 1986. The reported rental income exceeded the fair rental value of the office space and computer equipment and included compensation to Mrs. Langer for her services to the corporation. In addition to the rental payments, Mrs. Langer reported $ 14,040 salary from *55 the corporation in 1985. In a loan application signed June 4, 1984, Mrs. Langer represented that her annual salary as vice president and marketing director of the corporation was $ 50,000. In the business plan for the corporation prepared by petitioners and dated February 15, 1984, Mrs. Langer's salary from the corporation was projected at $ 50,000 for 1984-1985, $ 75,000 for 1985-1986, and $ 100,000 for 1986-1987. That business plan also projected salaries for Mr. Langer as "accountant/tax consultant" at $ 12,000 for 1984-1985, $ 18,000 for 1985-1986, and $ 24,000 for 1986-1987. In 1984, when they purchased the Antrim residence, petitioners applied for a mortgage from Northland Mortgage Company (the mortgage company). The mortgage company altered the terms initially proposed for the mortgage, and a dispute arose between petitioners and the mortgage company. Petitioners received $ 7,500 in settlement of the dispute. Petitioners did not report the $ 7,500 payment on their 1984 income tax return. Mr. Langer prepared petitioners' 1984 Federal income tax return. Petitioners claimed 50 percent of the use of the Whiting residence as business use of the home. Respondent determined, *56 and petitioners have agreed, that the correct percentage was 13 percent. They claimed that 25 percent of the Antrim residence was devoted to business use. Petitioners' returns for 1985 and 1986 were prepared by a certified public accountant and also reported that 25 percent of the Antrim residence was devoted to business use. The returns were based on Mr. Langer's calculations, which included the living room and a daughter's bathroom as areas used exclusively for business. On their Federal income tax return for 1984, petitioners claimed depreciation and section 179 deductions and an investment tax credit associated with the purchase of commercial grade carpeting installed in the lounge area and in the piano studio. They also claimed deductions relating to furniture, a cabinet, and a television set in the lounge area, and a telephone and intercom system throughout the house. OPINION Various issues concerning petitioners' tax liability for 1983 and the corporation's tax liability for 1984 were resolved in Langer v. Commissioner, T.C. Memo. 1990-268. The parties expressly agreed that certain issues in these cases would be resolved consistent with the opinion *57 in that case, which was filed May 30, 1990, over a year prior to trial of these cases. In the prior case, one of the issues involved respondent's determination that some of the payments from the corporation to petitioners constituted a dividend. In our prior opinion, we concluded that the amount claimed as rental from the corporation to petitioners was excessive, but that any amount not deductible as rent was deductible by the corporation as compensation; thus, the full amount paid was deductible by the corporation. In the deficiency notices in these cases, respondent reduced the income reported by petitioners as rental income on Schedule E and treated the reduction as dividend income to petitioners from the corporation. Respondent's trial memorandum dated May 31, 1991, stated: Issues 2, 3, and 4. Schedule E Income, Expenses and Dividends
These issues should be resolved on the same basis as the prior opinion in Langer v. Commissioner, T.C.M. 1990-268.
Neither party addressed the dividend issue at trial, and petitioners' opening brief asserted that respondent had conceded that issue. Respondent contends that he did not concede the dividend issue and would *58 not do so without a corresponding reversal of the reduction of Schedule E income. Certainly the income received from the corporation must be recognized by petitioners in some manner. The parties dispute the allocation of that income between rental and compensation, because the amount received as rent is a limitation on deductions under section 280A, as discussed below. Whether based on respondent's concession or not, we see no reason to depart from the holding of the prior case with respect to the amounts paid by the corporation to petitioners. None of those amounts, therefore, will be treated as dividend income. Petitioners contend that respondent asserted for the first time on brief that the noncorporate lessor rules of section 46(e)(3)(B) bar the investment tax credits claimed by petitioners in 1984. In the statutory notice and in respondent's trial memorandum, disallowance was attributed to failure of the property to qualify under section 38 and "lack of substantiation of the business usage." In respondent's opening statement, counsel referred to the noncorporate lessor rules, but he did so in the context of section 179 and not specifically with reference to the investment *59 tax credit. We conclude, therefore, that respondent has not properly raised in these cases the limitations of section 46(e)(3)(B) or that respondent should have the burden of proof on this issue. There is insufficient evidence in the record to decide the issue on the merits, and we decline to do so. As to all other issues, petitioners have the burden of proof. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). Except for limited testimony of a certified public accountant, petitioners presented only their own uncorroborated testimony. Business Use of the Home
Deductions claimed by petitioners with respect to use of the Antrim residence in relation to Mrs. Langer's piano teaching and the corporation's business are governed by section 280A. During the years in issue, the relevant provisions of that section were as follows: SEC. 280A. DISALLOWANCE OF CERTAIN EXPENSES IN CONNECTION WITH BUSINESS USE OF HOME, RENTAL OF VACATION HOMES, ETC. (a) General Rule. -- Except as otherwise provided in this section, in the case of a taxpayer who is an individual or an S corporation, no deduction otherwise allowable under this chapter shall be allowed with *60 respect to the use of a dwelling unit which is used by the taxpayer during the taxable year as a residence. * * * (c) Exceptions for Certain Business or Rental Use; Limitation on Deductions for Such Use. -- (1) Certain business use. -- Subsection (a) shall not apply to any item to the extent such item is allocable to a portion of the dwelling unit which is exclusively used on a regular basis -- (A) [as] the principal place of business for any trade or business of the taxpayer, (B) as a place of business which is used by patients, clients, or customers in meeting or dealing with the taxpayer in the normal course of his trade or business, or (C) in the case of a separate structure which is not attached to the dwelling unit, in connection with the taxpayer's trade or business. In the case of an employee, the preceding sentence shall apply only if the exclusive use referred to in the preceding sentence is for the convenience of his employer. * * * (3) Rental use. -- Subsection (a) shall not apply to any item which is attributable to the rental of the dwelling unit or portion thereof (determined after the application of subsection (e)). * * * (5) Limitation on deductions. *61 -- In the case of a use described in paragraph (1), (2), or (4), and in the case of a use described in paragraph (3) where the dwelling unit is used by the taxpayer during the taxable year as a residence, the deductions allowed under this chapter for the taxable year by reason of being attributed to such use shall not exceed the excess of -- (A) the gross income derived from such use for the taxable year, over (B) the deductions allocable to such use which are allowable under this chapter for the taxable year whether or not such unit (or portion thereof) was so used. * * * (e) Expenses Attributable to Rental. -- (1) In general. -- In any case where a taxpayer who is an individual or an S corporation uses a dwelling unit for personal purposes on any day during the taxable year (whether or not he is treated under this section as using such unit as a residence), the amount deductible under this chapter with respect to expenses attributable to the rental of the unit (or portion thereof) for the taxable year shall not exceed an amount which bears the same relationship to such expenses as the number of days during each year that the unit (or portion thereof) is rented at a fair rental *62 bears to the total number of days during such year that the unit (or portion thereof) is used. (2) Exception for deductions otherwise allowable. -- This subsection shall not apply with respect to deductions which would be allowable under this chapter for the taxable year whether or not such unit (or portion thereof) was rented.
A taxpayer claiming deductions for business use of a residence must establish the portion of the residence that is used exclusively for business purposes. Combined personal and business use precludes deductibility of the cost of the residence. See, generally, Goldberger, Inc. v. Commissioner, 88 T.C. 1532, 1557 (1987). The parties have agreed on the amount of space in the Antrim residence used exclusively by the corporation. They disagree, however, as to the amount of space in the Antrim residence used exclusively by Mrs. Langer's piano teaching business. The main area in dispute is the so-called "lounge area". Mrs. Langer testified that the popcorn machine and jukebox were used for "behavior modification" of her students and that the television set and the library reference materials in the lounge area were used only by students *63 and their parents. Sleep sofas in the lounge were explained as providing places for the parents to rest. Respondent, however, relies primarily on Mrs. Langer's description of the annual open house at the residence, which was, in her words: "It's a wonderful moment for us to revel in our year's success, and share our success with our family and our friends." Respondent contends that Mrs. Langer's quoted testimony establishes that the lounge area was not used exclusively for a qualified business purpose. He argues that the annual use of the entire residence for the corporation's open house for petitioners' family and friends requires that we hold that the lounge area was not used exclusively for business purposes. He cites Hamacher v. Commissioner, 94 T.C. 348, 356 (1990), in which we held that "when a taxpayer utilizes one home office in conducting numerous business activities, each and every business use must be of the type(s) described in section 280A(c)(1)." Respondent also argues that petitioners' denial of personal use of the lounge area by petitioners' children is not credible. We agree with respondent that the open house described by Mrs. Langer's testimony *64 undermines petitioners' claim that the lounge was used exclusively for business. The type of social gathering described by Mrs. Langer is not the type of entertainment that may be directly charged as a business expense. See, e.g., Feldman v. Commissioner, 86 T.C. 458, 464-465 (1986); Flaig v. Commissioner, T.C. Memo. 1984-150; Gardner v. Commissioner, T.C. Memo. 1983-171. Similarly, social use of an area that serves as an office in the home precludes qualification of that area under section 280A(c). See Chauls v. Commissioner, T.C. Memo. 1980-471, involving music teachers. The exclusive use requirement of section 280A(c)(1) is an "all-or-nothing" standard. Hamacher v. Commissioner, 94 T.C. at 357. Petitioners' use of the lounge area and other areas disputed by respondent was more than the de minimis use described in dictum in Hughes v. Commissioner, T.C. Memo. 1981-140, relied on by petitioners. As demonstrated by the cases cited, this issue is essentially factual, and, ultimately, it is a matter of whether petitioners have satisfied their burden of proof *65 with reliable evidence. Upon due consideration of the entire record, we are not persuaded that the lounge area or other areas not conceded by respondent were used exclusively for petitioners' business activities. Respondent's determination of the portion of the residence used for business will be sustained. The parties dispute respondent's allocation to dividends of the payments made by the corporation to petitioners during each year and reported by petitioners as rental income. As indicated above, we see no reason to treat any of those payments as dividends rather than compensation to Mrs. Langer. The significance of the allocation in this context is that the deductions relating to the corporate office are limited to the rent received. Sec. 280A(c)(5); Feldman v. Commissioner, 84 T.C. 1, 7-8 (1985), affd. 791 F.2d 781 (9th Cir. 1986). Mr. Langer testified, without any support for his opinion, that he believed the fair rental value of the office space and computer equipment was $ 25,000 per year. He did not explain why the reported rent varied from year to year. His testimony is not reliable. In their brief, petitioners ask that we determine *66 the amount paid as rent by deducting reasonable compensation for Mrs. Langer's services from the total amount paid. As indicated in our findings of fact, Mrs. Langer's projected salary far exceeded her reported compensation and the payments reported as rent. Petitioners' suggestions as to allocation are unsupported by the record and contrary to other claims in the record. In the statutory notices, respondent computed fair rental based on comparable rental values for computers and reasonable return on the office space. Petitioners have not shown that respondent's determination was erroneous. That determination, therefore, will be sustained. Petitioners concede in their brief that floor tile, wall-to-wall carpeting, and built-in cabinets are not eligible for the investment tax credit. They continue to claim the credit, however, for exterior lighting, a telephone and intercom system, and "All the rest of the property". Mr. Langer testified that petitioners did not have a personal telephone number and that they received no personal telephone calls. We cannot accept this testimony. The intercom was installed throughout the house, including the bedrooms and other rooms used for *67 personal purposes. We cannot determine from the record how much, if any, of the remaining personal property is properly allocable to business use, and petitioners, therefore, have failed to satisfy their burden of proof. The $ 7,500 Settlement
Petitioners contend that the $ 7,500 settlement payment received by them reduces the cost of the residence and should not be treated as income in 1984 (or, as determined by respondent, as a reduction in interest expense attributable to the residence). Petitioners rely on Alex v. Commissioner, 70 T.C. 322 (1978), affd. 628 F.2d 1222 (9th Cir. 1980), and Freedom Newspapers, Inc. v. Commissioner, T.C. Memo. 1977-429. Neither of those cases, however, involved a dispute over the terms of a mortgage, which affects the interest to be paid by the borrowers. There was no adjustment of the purchase price of petitioners' residence here. Petitioners must include the $ 7,500 payment in their taxable income for 1984. Petitioners contend that they are entitled to a deduction of approximately $ 1,500 for attorneys fees paid in relation to the dispute with the mortgage company. There is no *68 basis for allocation in this record, however, of amounts paid to their attorneys in relation to the settlement, as contrasted to services relating to acquisition of the residence that must be added to the cost of the residence. Petitioners have failed to satisfy their burden of proving that they are entitled to any deduction against the settlement income. Additions to Tax
Respondent determined that petitioners were liable for additions to tax for negligence for each year under section 6653(a). Respondent also determined that petitioners were liable for an addition to tax under section 6661 for a substantial understatement of income tax for 1984. With respect to the additions to tax for negligence, petitioners contend that Mr. Langer, although a revenue agent, was not sophisticated in preparing petitioners' income tax returns. They argue that they relied on their certified public accountant who prepared the returns for 1985 and 1986. These assertions, however, are contrary to the representations about Mr. Langer's skills set out in the corporation's promotional material, and they are refuted by other evidence in the record. Mr. Langer prepared the calculation on which *69 the office-in-the-home claim was based in each year. His calculation included the living room of the residence and a daughter's bathroom. He testified as follows: "At the time I prepared the 1984 return, I was not familiar with Section 280. But after reading Section 280, the way I read it, I still think it's deductible." Mrs. Langer, however, testified that the living room was used about 50 percent for personal use and was not used exclusively by the business. The accountant who supervised the preparation of petitioners' returns for 1985 and 1986 testified that he had discussed with petitioners various alternatives with respect to the office-in-the-home deduction. He did not state what advice he gave petitioners. The returns for 1985 and 1986 merely carried forward the percentages claimed on the 1984 return. Each of the returns exaggerated the amount of space in petitioners' residence used exclusively for business. This type of factual information is inherently within the knowledge of the taxpayers and is not a matter requiring an accountant's expertise. In any event, based on the evidence, we do not believe that petitioners relied on the accountant in this instance. In *70 addition, there are many other unexplained errors on petitioners' tax returns for the years in issue, some of which have been conceded by petitioners. There is no evidence in the record from which we can conclude that any underpayment is not due to negligence. With respect to the addition to tax under section 6661 for 1984, petitioners contend that there is no substantial understatement and that they have substantiated all of the items claimed. They have not argued any other ground for reduction of the amount subject to the addition to tax. The $ 7,500 settlement payment received by petitioners was not disclosed on their 1984 return, and the cases they now cite do not constitute substantial authority for their failure to report that item of income. See Antonides v. Commissioner, 91 T.C. 686, 700-704 (1988), affd. 893 F.2d 656 (4th Cir. 1990). They have stipulated to disallowance of contributions claimed in the amount of $ 1,251, automobile expenses claimed in the amount of $ 4,064, and a mathematical error, for which we have no explanation. Petitioners have not shown substantial authority in regard to the claimed but disallowed investment *71 tax credit. They have given us no reason to reduce the understatement subject to the addition to tax under section 6661. To reflect the foregoing, Decisions will be entered under Rule 155. Footnotes
1. 50 percent of the interest due on the entire deficiency.↩