T.C. Memo. 2009-176

UNITED STATES TAX COURT

ROB AND SHIRLEY TYSON, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

RS TYSON AND ASSOCIATES, INC., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 6879-07, 6880-07.     Filed July 29, 2009.

<u>Kathryn E. Barnhill</u>, for petitioners.

<u>Catherine S. Tyson</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

VASQUEZ, <u>Judge</u>:  In these consolidated cases respondent determined the following deficiencies in and penalties on petitioners' 2003 Federal income taxes:

Rob and Shirley Tyson, docket No. 6879-07

|            | Penalty       |
| Deficiency | Sec. 6662(a)  |
| --- | --- |
| $5,199     | $1,039.80     |

RS Tyson & Associates, Inc., docket No. 6880-07

|            | Penalty       |
| Deficiency | Sec. 6662(a)  |
| --- | --- |
| $8,027     | $1,605.40     |

Pursuant to a joint motion, these cases have been consolidated for trial, briefing, and opinion. The following issues remain for decision regarding 2003:[1] (1) Whether RS Tyson & Associates, Inc. (RS Tyson), is entitled to deductions claimed for alleged business expenses; (2) whether Rob and Shirley Tyson (Mr. and Mrs. Tyson) are entitled to deductions claimed for alleged expenses on Schedule E, Supplemental Income and Loss; (3) whether Mr. and Mrs. Tyson received constructive dividends from RS Tyson; and (4) whether petitioners are liable for accuracy-related penalties pursuant to section 6662(a).[2]

---

[1] Mr. and Mrs. Tyson deducted on Schedule E, Supplemental Income and Loss, interest of $6,176 and depreciation of $12,611 for 2003. In their brief (they did not file a reply brief), they failed to address the disallowance of those deductions. Accordingly, we conclude that they have abandoned these issues. See Petzoldt v. Commissioner, 92 T.C. 661, 683 (1989).

[2] All section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts, the supplemental stipulation of facts, and the attached exhibits are incorporated herein by this reference. At the time they filed the petitions, Mr. and Mrs. Tyson resided in Oklahoma, and RS Tyson had its principal place of business in Oklahoma.

I. RS Tyson

During 2003 RS Tyson, a C corporation, had two business activities: Tyson Painting and a Shaklee distributorship.[3] Mr. and Mrs. Tyson each owned 50 percent of the outstanding shares of RS Tyson. Mrs. Tyson sold Shaklee products on behalf of RS Tyson.[4]

Mr. and Mrs. Tyson were not employees of RS Tyson.[5] Mr. and Mrs. Tyson reported $89 of wages and salaries from Southern Hills Baptist Church on their 2003 return. They reported no other wages or salaries on that return. RS Tyson did not report (1)

---

[3] See Chaney v. Commissioner, T.C. Memo. 2009-55 (Shaklee distributors sell nutritional and cleaning products from Shaklee Corp.).

[4] Respondent concedes that Mrs. Tyson conducted an active trade or business as a distributor of Shaklee products.

[5] It is unclear from the record whether Mr. and Mrs. Tyson were independent contractors of RS Tyson or worked for RS Tyson in some other capacity.

any compensation to officers or (2) salaries or wages to any employees.

For 2003 RS Tyson deducted the following expenses on its Form 1120, U.S. Corporation Income Tax Return:

| Expense | Amount |
| --- | --- |
| Rent of Mr. and Mrs. Tyson's home | $24,000 |
| Lease of equipment | 12,000 |
| Employee benefit program | 8,919 |
| Laundry | 1,893 |
| Travel | 4,209 |
| Meals and entertainment | 1,119 |
| Automobile | 8,695 |

Respondent disallowed these deductions.

A. Rent of Mr. and Mrs. Tyson's Home and Equipment Leasing Expense

On Schedule E, Mr. and Mrs. Tyson reported $36,000 of rents received from RS Tyson. They reported that the $36,000 consisted of $24,000 for the use of Mr. and Mrs. Tyson's home for Shaklee business purposes and $12,000 for the lease of office and painting equipment.

RS Tyson deducted as a business expense alleged rent of $12,000 paid to Mr. and Mrs. Tyson to lease Mr. and Mrs. Tyson's office equipment and painting equipment. The record is silent as to what specific equipment was leased.

RS Tyson deducted as a business expense alleged rent of $24,000 paid to Mr. and Mrs. Tyson to lease space in Mr. and Mrs. Tyson's home. RS Tyson allegedly rented space in Mr. and Mrs. Tyson's home for $2,000 per month. Mr. and Mrs. Tyson arrived at

this rental amount after estimating the number of hours per month RS Tyson would need to rent meeting space (100 hours per month) and after taking into account the hourly rates of local establishments that rented meeting space/rooms by the hour. The local Marriott Hotel and other places that rented meeting space/rooms were called, and Mr. and Mrs. Tyson learned that the rates these establishments received for rental of meeting space/rooms were between $75 and $100 per hour. Mr. and Mrs. Tyson decided that RS Tyson should rent meeting space in their home at a cost of $20 per hour.

Petitioners claimed that Mr. and Mrs. Tyson's living room was the meeting room, the dining room was where training and makeovers took place, the kitchen was where Mrs. Tyson made "Shaklee shakes", and the bathroom by the office also was used for makeovers. The dining room was where Mr. and Mrs. Tyson ate dinner.

In a notice of deficiency issued to RS Tyson, respondent disallowed the total deductions of $36,000. In a notice of deficiency issued to Mr. and Mrs. Tyson, respondent "determined that the Schedule E listed did not exist during the tax year ended December 31, 2003", decreased rents received by $36,000, and increased constructive dividends received by $36,000.

B.  Employee Benefit Program

RS Tyson deducted $8,919 as employee benefit program expenses.  Mr. and Mrs. Tyson each signed a document entitled "Corporate Resolution Establishing Self-Insured Medical Payment Plan" which established the employee benefit program of RS Tyson. The plan provided that RS Tyson would pay or reimburse, directly or indirectly, certain medical and dental expenses of its employees.  The employee benefit program was intended to qualify as one under which payments to employees are excludable from their gross income under section 105(b).

Under the employee benefit program the medical and dental expenses to be paid or reimbursed would be those for which the employee was not compensated by insurance or otherwise and which would be treated as medical expenses under section 213.  The amount that would be paid or reimbursed was limited to $10,000 per person per calendar year.  The employee benefit program covered reimbursements for medical or medical-related insurance, medical or medical-related services, life insurance, disability insurance, dental or dental-related services, and chiropractic or chiropractic-related services.

During 2003 RS Tyson paid the following amounts:  $2,276 for term life insurance for Mr. Tyson, $626 for term life insurance for Mrs. Tyson, and $3,091 to Christian Care Medi-Share for "Affordable, Biblical Healthcare" for Mr. and Mrs. Tyson.  During

2003 RS Tyson made reimbursements as follows: $1,578 to Mr. Tyson for medical expenses and $1,324 to Mrs. Tyson for medical expenses.

C.  Laundry Expenses

RS Tyson deducted $1,893 as laundry expenses. RS Tyson deducted the cost of laundering the uniforms that Mr. Tyson used for painting. To substantiate this expense petitioners submitted receipts and payments for the purchase of Mr. Tyson's painting uniforms, including the purchase of shirts, boots, and socks, and one check for $36 that contained "alter paint pants" in the memo section of the check.

D.  Travel Expenses

RS Tyson deducted $4,209 as travel expenses. RS Tyson deducted the cost of a trip by Mr. and Mrs. Tyson to Disneyland and a personal trip for Mr. and Mrs. Tyson to Branson, Missouri. Mr. and Mrs. Tyson took their son, daughter-in-law, and grandson with them on the trip to Disneyland.

E.  Meals and Entertainment Expenses

RS Tyson deducted $1,119 as meals and entertainment expenses. RS Tyson deducted the cost of meals to celebrate Mr. and Mrs. Tyson's daughter's graduation and Mrs. Tyson's birthday. Additionally, RS Tyson deducted the cost of numerous meals that Mr. and Mrs. Tyson had with their family. RS Tyson also deducted

the cost of a small number of meals with Shaklee business clients.

To substantiate the meals and entertainment expense deductions, petitioners submitted photocopies of receipts from restaurants. The receipts contained notations identifying the persons who consumed the meals and indicating that the purpose of the meals regarded Shaklee business such as discussing various Shaklee products, Shaklee business plans and strategy, Shaklee business volume, or the layout of Shaklee advertisements.

F. <u>Automobile Expenses</u>

RS Tyson deducted $8,695 as automobile expenses. To substantiate this expense, RS Tyson submitted a spreadsheet listing "car charge" and insurance; a document from Shaklee entitled "bonus statement" that listed "car program activity"; RS Tyson's bank statements; photocopies of toll receipts; a spreadsheet for "gas, repairs, insurance, and lease, etc."; gas receipts, many of which are illegible; and copies of insurance payment schedules. RS Tyson kept track of only the personal use mileage of the automobiles.

II. <u>Mr. and Mrs. Tyson</u>

For 2003 Mr. and Mrs. Tyson deducted the following expenses on their Schedule E:

| Expense | Amount |
|---|---|
| Legal and professional fees | $350 |
| Insurance | 502 |
| Repairs | 32 |
| Taxes | 982 |
| Utilities | 1,361 |

Respondent disallowed these deductions.

A. Legal and Professional Fees

Mr. and Mrs. Tyson deducted legal and professional fees of $350 for 2003. The record does not contain any information about this deduction.

B. Insurance, Repairs, Taxes, and Utility Expenses

Mr. and Mrs. Tyson deducted insurance expenses of $502, repair expenses of $32, taxes of $982, and utility expenses of $1,361. These expenses arose from the alleged rental arrangement for their home. The record does not contain any further information about these deductions.

C. Constructive Dividends: Automobile Purchase

In December 2003 RS Tyson paid $15,000 to Reliable Toyota. The $15,000 was a deposit on a vehicle purchased for Mr. and Mrs. Tyson. Mr. and Mrs. Tyson got a loan for the balance of the cost of the vehicle.

OPINION

The Commissioner's determinations are generally presumed correct, and the taxpayer bears the burden of proving the

determinations erroneous.[6]  Rule 142(a).  The taxpayer bears the burden of proving that he is entitled to the deduction claimed, and this includes the burden of substantiation.  Id.; Hradesky v. Commissioner, 65 T.C. 87, 90 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976).  A taxpayer must substantiate amounts claimed as deductions by maintaining the records necessary to establish he or she is entitled to the deductions.  Sec. 6001.

Section 162(a) provides a deduction for certain business expenses.  In order to qualify for the deduction under section 162(a), "an item must (1) be 'paid or incurred during the taxable year,' (2) be for 'carrying on any trade or business,' (3) be an 'expense,' (4) be a 'necessary' expense, and (5) be an 'ordinary' expense."  Commissioner v. Lincoln Sav. & Loan Association, 403 U.S. 345, 352 (1971); see also Commissioner v. Tellier, 383 U.S. 687, 689 (1966) (the term "necessary" imposes "only the minimal requirement that the expense be 'appropriate and helpful' for 'the development of the [taxpayer's] business" (quoting Welch v. Helvering, 290 U.S. 111, 113 (1933))); Deputy v. du Pont, 308 U.S. 488, 495 (1940) (to qualify as "ordinary", the expense must relate to a transaction "of common or frequent occurrence in the type of the business involved").  Whether an expense is ordinary is determined by time, place, and circumstance.  Welch v.

---

[6]  Petitioners have not established that they satisfied the requirements of sec. 7491(a).  Accordingly, the burden of proof does not shift to respondent.

Helvering, supra at 113-114. Respondent has not challenged the existence of a trade or business.[7]

If a taxpayer establishes that he or she paid or incurred a deductible business expense but does not establish the amount of the expense, we may approximate the amount of the allowable deduction, bearing heavily against the taxpayer whose inexactitude is of his or her own making. Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930). However, for the Cohan rule to apply, there must be sufficient evidence in the record to provide a basis for the estimate. Vanicek v. Commissioner, 85 T.C. 731, 743 (1985). Certain expenses may not be estimated because of the strict substantiation requirements of section 274(d). See sec. 280F(d)(4)(A); Sanford v. Commissioner, 50 T.C. 823, 827 (1968), affd. per curiam 412 F.2d 201 (2d Cir. 1969).

1. Rent of Mr. and Mrs. Tyson's Home

RS Tyson deducted rental expenses for the use of Mr. and Mrs. Tyson's home of $24,000 for 2003. RS Tyson claims that during 2003 it rented most of Mr. and Mrs. Tyson's home for Shaklee business purposes. Supposedly, Mr. and Mrs. Tyson's living room was the meeting room, the dining room was where training and makeovers took place, the kitchen was where Mrs. Tyson made "Shaklee shakes", and the bathroom by the office also

---

[7] In other words, respondent concedes that both Tyson Painting and the Shaklee distributorship were legitimate businesses carried on by RS Tyson.

was used for makeovers.  The dining room was where Mr. and Mrs. Tyson ate dinner.

"A close relationship between a lessor and lessee * * * [requires] a careful examination of the circumstances surrounding the arrangement to determine whether the payments are, in fact, for the rental of the property."  Feldman v. Commissioner, 84 T.C. 1, 5 (1985), affd. 791 F.2d 781 (9th Cir. 1986).  There is a lack of proof of a bona fide rental.  See Chaney v. Commissioner, T.C. Memo. 2009-55.  The amount claimed as rent was a guesstimate--both as to the cost and as to the amount of time RS Tyson used the property.  The purported rental agreement has little reality beyond tax planning.  See id.  The purported rental was not at arm's length, and we disregard it for lack of economic substance.[8]  Accordingly, we sustain respondent's determination on this issue.

## 2. Employee Benefit Program

RS Tyson deducted employee benefit program expenses of $8,919 for 2003.  Mr. and Mrs. Tyson each signed up for the employee benefit program offered by RS Tyson.

"The deductibility of employee benefit plan expenses generally requires proof, in the first instance, of an

---

[8]  Additionally, Mr. and Mrs. Tyson made personal use of the alleged rented space.  Furthermore, we note that respondent reduced Mr. and Mrs. Tyson's rental income to zero in the notice of deficiency.

employer-employee relationship." <u>Francis v. Commissioner</u>, T.C. Memo. 2007-33.  Mr. and Mrs Tyson reported $89 of wages and salaries from Southern Hills Baptist Church on their 2003 return. They reported no other wages or salaries on that return.  RS Tyson did not report (1) any compensation to officers or (2) salaries or wages to any employees.  No evidence of an employment agreement was presented.  Mr. and Mrs. Tyson were not employees of RS Tyson.  See <u>Haeder v. Commissioner</u>, T.C. Memo. 2001-7. Accordingly, we sustain respondent's determination disallowing the employee benefit plan expense deduction.

3. <u>Laundry Expenses</u>

RS Tyson deducted laundry expenses of $1,893 for 2003.  This allegedly consisted of the cost of laundering the uniforms Mr. Tyson painted in.  The evidence petitioners presented consisted of receipts and payments for the purchase of Mr. Tyson's painting uniforms including the purchase of shirts, boots, and socks. Petitioners also submitted one for $36 with "alter paint pants" in the memo section of the check.

RS Tyson must prove that the laundry expenses claimed for the year in issue were ordinary and necessary expenses.  Sec. 162(a); see <u>Deputy v. du Pont</u>, <u>supra</u> at 495 (deductibility under section 162(a) is dependent upon the taxpayer's establishing that an expense is "normal, usual or customary" in the taxpayer's trade or business); see also sec. 1.162-1(a), Income Tax Regs.

(expenditures must be "directly connected with or pertaining to the taxpayer's trade or business"). In order to satisfy that burden in this instance, RS Tyson must establish that Mr. Tyson was a bona fide employee of RS Tyson for the year in issue. See Haeder v. Commissioner, supra; see also Neonatology Associates, P.A. v. Commissioner, 115 T.C. 43, 93 (2000) ("Neonatology contributed money to the Neonatology Plan for the benefit of Mr. Mall. Mr. Mall was neither an employee of Neonatology nor an individual who was eligible to participate in Neonatology's Plan. We conclude that these contributions served no business purpose of Neonatology, and, hence, that they were not ordinary and necessary expenses paid to carry on Neonatology's business."), affd. 299 F.2d 221 (3d Cir. 2002); Love Box Co. v. Commissioner, T.C. Memo. 1985-13, ("'before expenses will be considered ordinary and necessary under section 162, it must be established that they bear a proximate and direct relationship to the taxpayer's trade or business.'" (quoting Carroll v. Commissioner, 51 T.C. 213, 218 (1968), affd. 418 F.2d 91 (7th Cir. 1969)), affd. 842 F.2d 1213 (10th Cir. 1988). Mr. Tyson was not an employee of RS Tyson. Accordingly, these were not proper expenses of RS Tyson, and we sustain respondent's determination disallowing the laundry expenses.

4. <u>Travel Expenses</u>

RS Tyson deducted travel expenses of $4,209 for 2003.  A deduction is allowed for ordinary and necessary traveling expenses while away from home in the pursuit of a trade or business.  Sec. 162(a)(2).  If a taxpayer travels to a destination at which he engages in both business and personal activities, the traveling expenses to and from the destination are deductible only if the trip is related primarily to the taxpayer's trade or business.  Sec. 1.162-2(b)(1), Income Tax Regs.  If the trip is primarily personal, the traveling expenses to and from the destination are not deductible.  <u>Id.</u>; see also sec. 262.

In addition to satisfying the criteria for deductibility under section 162, certain categories of expenses also must satisfy the strict substantiation requirements of section 274(d) in order for a deduction to be allowed.  The expenses to which section 274(d) applies include, among other things, travel expenses (including meals and lodging while away from home).  Sec. 274(d)(1).  We may not use the <u>Cohan</u> doctrine to estimate expenses covered by section 274(d).  See <u>Sanford v. Commissioner</u>, 50 T.C. at 827; sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985).  To substantiate a deduction attributable to travel, a taxpayer must maintain adequate records or present corroborative evidence to show the following:  (1) The

amount of the expense; (2) the time and place of the travel; (3) the business purpose of the expense; and (4) the business relationship to the taxpayer. Sec. 274(d) (flush language). "To meet the 'adequate records' requirements of section 274(d), a taxpayer shall maintain an account book, diary, log, statement of expense, trip sheets, or similar record * * *, and documentary evidence". Sec. 1.274-5T(c)(2)(i), Temporary Income Tax Regs., 50 Fed. Reg. 46017 (Nov. 6, 1985).

RS Tyson deducted the cost of a family trip for Mr. and Mrs. Tyson to Disneyland and a personal trip for Mr. and Mrs. Tyson to Branson, Missouri, as travel expenses. For traveling expenses to be deductible, they must be in pursuit of the trade or business. Secs. 162-1(a), 162-2, Income Tax Regs. Section 1.274-5T(b)(2)(iv) and (c)(2)(ii)(B), Temporary Income Tax Regs., 50 Fed. Reg. 46015, 46018 (Nov. 6, 1985), provides that the taxpayer must record the business reason for the travel or the nature of the business benefit derived or expected to be derived on account of the travel unless the business purpose is evident from the surrounding facts and circumstances.

RS Tyson has not established how the cost of a family trip for Mr. and Mrs. Tyson to Disneyland and a personal trip for Mr. and Mrs. Tyson to Branson, Missouri, were ordinary or necessary to its businesses. Furthermore, RS Tyson has failed to substantiate the claimed travel expenses in accordance with

sections 162 and 274.  Accordingly, we sustain respondent's determination on this issue.

5.  Meals and Entertainment Expenses

RS Tyson deducted meals and entertainment expenses of $1,119 for 2003.  Section 162 permits the deduction of food and beverage expenses if they are ordinary, necessary, and reasonable expenses incurred by the taxpayer in its business.  No deduction is allowed with respect to personal, living, or family expenses. Sec. 262.

In addition to satisfying the criteria for deductibility under section 162, this category of expenses also must satisfy the strict substantiation requirements of section 274(d) in order for a deduction to be allowed.  This includes establishing the business purpose of the expenditure or use and the business relationship to the taxpayer of the persons entertained.  See sec. 1.274-5T(a) and (b), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985).

Section 274(a) further restricts the deduction of business food and beverage expenses.  An expenditure must be directly related to the conduct of the taxpayer's trade or business or associated with the active conduct of the taxpayer's trade or business.  Sec. 274(a)(1)(A).  An expenditure is considered associated with the active conduct of the taxpayer's trade or business if the taxpayer establishes that he had a clear business

purpose in making the expenditure, such as to obtain new business or to encourage the continuation of an existing business relationship. Sec. 1.274-2(d)(2), Income Tax Regs. In order to establish a substantial and bona fide business discussion, it must be shown that the taxpayer actively engaged in a business meeting, negotiation discussion, or other bona fide business transaction, other than entertainment, for the purpose of obtaining income or other specific trade or business benefit. Sec. 1.274-2(d)(3)(i)(a), Income Tax Regs. Additionally, it must be established that this business meeting, negotiation, discussion, or transaction was substantial in relation to the entertainment. Id.

RS Tyson deducted numerous meals Mr. and Mrs. Tyson had with their family. For example, RS Tyson deducted meals for Mr. and Mrs. Tyson's daughter's graduation and Mrs. Tyson's birthday celebration. RS Tyson has not established how these expenditures were ordinary or necessary to its businesses. Additionally, some of the receipts are redundant, and many of the receipts are illegible other than Mrs. Tyson's notes and/or re-creation of the amounts spent. Furthermore, RS Tyson has failed to substantiate the claimed meals and entertainment expenses in accordance with sections 162 and 274. See sec. 1.274-5T(b)(3)(iv) and (v), Temporary Income Tax Regs., 50 Fed. Reg. 46015 (Nov. 6, 1985) (requiring proof of the name, title, or other designation of the

persons entertained sufficient to establish the business relationship to the taxpayer).

After eliminating the aforementioned nondeductible food and beverage expenses claimed by RS Tyson, a few legible receipts remain.  These are:

| Date | Amount | Client(s) |
|------|--------|-----------|
| 4/27/03 | $22.52 | Claude and Janet West |
| 9/9/03 | 20.18 | Charles Amos |
| 9/18/03 | 18.06 | Kathy Huffman |
| 9/23/03 | 28.68 | Jeanette Carter |
| 10/8/03 | 6.49 | Dan Cramer |
| 11/6/03 | 8.23 | Sandy Brown |
| 11/11/03 | 14.74 | Charles Amos |
| 12/2/03 | 12.98 | Charles Amos |
| 12/4/03 | 12.32 | Karen Anderson |
| 12/20/03 | 29.89 | Jeanette and Charles Amos |
| Total | 174.09 | |

Each of the listed persons was a Shaklee business client of RS Tyson.  During each of these meals Shaklee business matters and discussions were held.  Mrs. Tyson and the other person(s) present discussed various Shaklee products, Shaklee business plans and strategy, Shaklee business volume, and/or the layout of Shaklee advertisements.  Accordingly, we conclude that the costs of buying meals for these specific clients were ordinary and necessary business expenses.

Further, we conclude that these meals were associated with the active conduct of RS Tyson's Shaklee business and that the meals directly preceded or followed substantial and bona fide business discussions.  The meals purchased were associated with

the active conduct of RS Tyson's Shaklee business because there was a clear business purpose in purchasing the meals for the clients.  RS Tyson had an existing business relationship with these individuals, and meals were used to discuss the sale of Shaklee products to customers and to encourage and increase the distribution of Shaklee products.  Further, at each meal, substantial and bona fide business discussions occurred.  At the top of each receipt Mrs. Tyson listed what sort of business discussion and transactions occurred at the meal.

Accordingly, we allow RS Tyson a deduction of $87.05 for meals and entertainment expenses.  Sec. 274(n)(1) (the amount of the deduction for allowable food and beverages expenses shall not exceed 50 percent of the amount of such expense).[9]

6.  Automobile Expenses

RS Tyson deducted automobile expenses of $8,695 for 2003. In addition to satisfying the criteria for deductibility under section 162, this category of expenses also must satisfy the strict substantiation requirements of section 274(d) in order for a deduction to be allowed.  Secs. 274(d)(4), 280F(d)(4)(A)(i) and (ii) (automobiles are listed property).  To substantiate a deduction attributable to listed property, a taxpayer must maintain adequate records or present corroborative evidence to

---

[9]  Total meals and entertainment expenses of $174.09 divided by 2 equals $87.05.

show the following: (1) The amount of the expense; (2) the time and place of use of the listed property; and (3) the business purpose of the use. Sec. 1.274-5T(b)(6), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985).

RS Tyson neither kept a diary, log, trip sheet, or similar record regarding the business use of the listed property nor established the time and place of the business use of the listed property; i.e., RS Tyson did not submit a business mileage log to establish the amount of business miles driven. See id.; sec. 1.274-5T(c)(2), Temporary Income Tax Regs., 50 Fed. Reg. 46017 (Nov. 6, 1985). Mrs. Tyson explained:

> most of the time that we're in the car, we're doing business, because every time we go -- I shouldn't say every time we go and drop our grandchild off at mother's day out or go to church, we're usually handing out our catalog. We're always prospecting. * * *
>
> So when we're out and about, we're in business.

RS Tyson failed to establish the time and place of business use of the listed property and the business purpose of the use of the listed property. RS Tyson has failed to substantiate the claimed automobile expenses in accordance with sections 162 and 274. Accordingly, we sustain respondent's determination on this issue.

7. Equipment Leasing Expenses

RS Tyson deducted $12,000 for amounts paid to Mr. and Mrs. Tyson to allegedly lease Mr. and Mrs. Tyson's office equipment

and painting equipment for 2003.  Section 162 allows a deduction as an ordinary and necessary business expense for "rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity."  Sec. 162(a)(3). To substantiate this expense RS Tyson introduced bank statements. The Court reviewed the bank statements and found no checks or other evidence indicating that this amount was paid to lease equipment.  RS Tyson has failed to substantiate a deduction for the claimed lease of equipment expenses.  Accordingly, we sustain respondent's determination on this issue.

8.  Legal and Professional Fees

A taxpayer may deduct under section 162 legal fees paid in obtaining legal advice with respect to the taxpayer's trade or business.  Levenson & Klein, Inc. v. Commissioner, 67 T.C. 694, 720-721 (1977).  Mr. and Mrs. Tyson deducted legal and professional fees of $350 for 2003.  To substantiate this expense they introduced bank statements.  The Court reviewed the bank statements and found no checks or other information related to legal and professional fees.  Mr. and Mrs. Tyson have failed to substantiate this amount.  Accordingly, we sustain respondent's determination on this issue.

9. <u>Insurance, Repairs, Taxes, and Utility Expenses</u>

These expenses (insurance expenses of $502, repair expenses of $32, taxes of $982, and utility expenses of $1,361) are related to the alleged rental of Mr. and Mrs. Tyson's residence to RS Tyson. As we previously determined, there is a lack of proof of a bona fide rental. See <u>supra</u> p. 12. The purported rental agreement has little reality beyond tax planning. The purported rental was not at arm's length, and we disregard it for a lack of economic substance.[10] Accordingly, we sustain respondent's disallowance of a deduction for the insurance, repairs, taxes,[11] and utility expenses.

10. <u>Constructive Dividends</u>

Respondent determined Mr. and Mrs. Tyson received $61,812 in constructive dividends from RS Tyson. This amount consisted of alleged rent expenses of $24,000, lease expenses of $12,000, image[12] expenses of $1,893, employee benefit plan expenses of $8,919, and an automobile downpayment expense of $15,000.

Generally, where a shareholder diverts corporate funds to his own use, those funds constitute constructive dividends to him

_____

[10] Additionally, Mr. and Mrs. Tyson made personal use of the alleged rented space.

[11] The taxes related to Mr. and Mrs. Tyson's residence may be deductible as expenses on Schedule A, Itemized Deductions.

[12] Mrs. Tyson testified that the image expense was for the cost of purchasing and laundering Mr. Tyson's uniforms.

and are ordinary income to the extent of the corporation's earnings and profits. See secs. 301(c), 316; Truesdell v. Commissioner, 89 T.C. 1280, 1295 (1987). "Where a corporation provides an economic benefit to a shareholder with no expectation of reimbursement, the benefit is a 'constructive dividend' and is taxable income." Benson v. Commissioner, 560 F.3d 1133, 1134 (9th Cir. 2009) (citation omitted), affg. T.C. Memo. 2004-272 and T.C. Memo. 2006-55.

Mr. and Mrs. Tyson each owned 50 percent of RS Tyson. When individuals are in substantial control of a corporation, special scrutiny of their transactions with the corporation may be necessary. Haber v. Commissioner, 52 T.C. 255, 266 (1969), affd. 422 F.2d 198 (5th Cir. 1970); Roschuni v. Commissioner, 29 T.C. 1193, 1202 (1958), affd. 271 F.2d 267 (5th Cir. 1959); see Tulia Feedlot, Inc. v. United States, 513 F.2d 800, 805 (5th Cir. 1975) ("Transactions between related taxpayers or between a close corporation and its principals * * * must be subject to close scrutiny." (citing United States v. Ragen, 314 U.S. 513 (1942))).

RS Tyson paid $15,000 to Reliable Toyota in December 2003. This money was a deposit on a vehicle purchased for Mr. and Mrs. Tyson. Mrs. Tyson admitted that "all the money is in RS Tyson". She testified that she has a tendency to write checks out of that account for personal items. The evidence established distributions from RS Tyson to Mr. and Mrs. Tyson or on behalf of

Mr. and Mrs. Tyson including the $15,000 RS Tyson paid as a downpayment on Mr. and Mrs. Tyson's car. Petitioners have failed to prove that any of the $61,812 in question was not diverted from RS Tyson for Mr. and Mrs. Tyson's own use. Accordingly, respondent's determination regarding the constructive dividends is sustained.[13]

11. <u>Accuracy-Related Penalty for Mr. and Mrs. Tyson</u>

Section 7491(c) provides that the Commissioner will bear the burden of production with respect to the liability of any individual for additions to tax and penalties. "The Commissioner's burden of production under section 7491(c) is to produce evidence that it is appropriate to impose the relevant penalty, addition to tax, or additional amount". <u>Swain v. Commissioner</u>, 118 T.C. 358, 363 (2002); see <u>Higbee v. Commissioner</u>, 116 T.C. 438, 446 (2001). The Commissioner, however, does not have the obligation to introduce evidence regarding reasonable cause or substantial authority. <u>Higbee v. Commissioner</u>, <u>supra</u> at 446-447.

Respondent determined that RS Tyson and Mr. and Mrs. Tyson are liable for the section 6662 penalty for 2003. Pursuant to section 6662(a) and (b)(1) and (2), a taxpayer may be liable for

---

[13] We note that respondent did not argue that RS Tyson did not deserve to be recognized as a separate taxpaying entity, and petitioners do not argue that RS Tyson's earnings and profits were insufficient to cover the constructive dividends.

a penalty of 20 percent on the portion of an underpayment of tax due to negligence or disregard of rules or regulations or a substantial understatement of income tax.  Negligence "includes any failure to make a reasonable attempt to comply with the provisions of this title", and disregard "includes any careless, reckless, or intentional disregard."  Sec. 6662(c). "Negligence" includes any failure by the taxpayer to keep adequate books and records or to substantiate items properly.  Sec. 1.6662-3(b)(1), Income Tax Regs.  Respondent met his burden of production as to Mr. and Mrs. Tyson[14] as they failed to substantiate the expenses claimed.[15]  See sec. 6001; sec. 1.6662-3(b)(1), Income Tax Regs. RS Tyson overstated expenses by deducting personal expenses of Mr. and Mrs. Tyson.  RS Tyson also failed to substantiate expenses (e.g., laundry expenses, travel expenses, meals and entertainment expenses, and automobile expenses).  See sec. 6001; sec. 1.6662-3(b)(1), Income Tax Regs.

---

[14]  Sec. 7491(c) imposes on the Commissioner a burden of production respecting "the liability of any _individual_" (emphasis added) for a penalty, addition to tax, or additional amount. Accordingly, respondent has no burden of production with respect to RS Tyson.

[15]  Additionally, as we have sustained all of respondent's deficiency determinations against Mr. and Mrs. Tyson, there is a "substantial understatement of income tax".  See sec. 6662(d)(1)(A) and (B).  A "substantial understatement" exists if the understatement exceeds the greater of (1) 10 percent of the tax required to be shown on the return for a taxable year or (2) $5,000 ($10,000 in the case of a corporation).  _Id._

The accuracy-related penalty is not imposed with respect to any portion of the underpayment as to which the taxpayer acted with reasonable cause and in good faith. Sec. 6664(c)(1). The decision as to whether the taxpayer acted with reasonable cause and in good faith depends upon all the pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs.

Mr. and Mrs. Tyson attempted to use RS Tyson as a vehicle to turn their nondeductible personal expenses into deductible business expenses. Petitioners' tax return preparer was not called as a witness. We infer that his testimony would not have been favorable to petitioners. See Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947). Petitioners have failed to prove that they acted with reasonable cause and in good faith. See sec. 6664(c)(1). Accordingly, we sustain the section 6662(a) penalty against RS Tyson and Mr. and Mrs. Tyson.

In reaching our holdings herein, we have considered all arguments made by the parties, and to the extent not mentioned above, we find them to be irrelevant or without merit.

To reflect the foregoing,

<u>Decision will be entered for respondent in docket No. 6879-07</u>.

<u>Decision will be entered under Rule 155 in docket No. 6880-07</u>.